Chas. W. Richardson et al. v. The Alpéna Lumber Co.

*Chattel mortgage void for uncertainty.*

A mortgage upon a stated quantity of mixed logs in the drive is void for uncertainty as against third parties who have acquired rights, if it does not furnish the data for separating the mortgaged logs from the mass.

Error to Alpena. Submitted January 9 and 10. Decided January 21.

Trover. Defendant brings error. The facts are stated.

*Kelley & Clayberg* for plaintiff in error. A mortgage on a stock of goods is not void for uncertainty, *People v. Bristol,* 35 Mich., 28, and cases; nor one upon a drove of cattle, *Brown v. Holmes,* 13 Kan., 482; any description is sufficient that enables third persons to identify the property, aided by inquiries which the mortgage itself indicates, *Lawrence v. Evarts,* 7 Ohio St., 194; and if good between the parties it is good as to all who have actual knowledge, *American Cigar Co. v. Foster,* 36 Mich., 368; *Robson v. Mich. Cent. R. R. Co.,* 37 Mich., 70; a mortgage upon a quantity of logs in the mass, with power to take possession, gives the right of selection, *Call v. Gray,* 37 N. H., 428; *Gardner v. Dutch,* 9 Mass., 427; *Shumway v. Rutter,* 7 Pick., 56; a mortgage is not absolutely void for an indefinite description, but may be explained by parol, *Sargeant v. Solberg,* 22 Wis., 132; *Eddy v. Caldwell,* 7 Minn., 225; *Bell v.*

*Prewitt,* 62 Ill., 361; *Stephens v. Tucker,* 55 Ga., 543; *Willey v. Snyder,* 34 Mich., 60; *Hardy v. Matthews,* 38 Mo., 121; *Bell v. Woodward,* 46 N. H., 315; *Midlothian etc. Co. v. Finney,* 18 Gratt., 304; *Wing v. Gray,* 36 Vt., 261; *Conklin v. Shelley,* 28 N. Y., 360; *Elder v. Miller,* 60 Me., 118; *Duke v. Strickland,* 43 Ind., 494; a mortgage description that is indefinite because it covers property that is in a mass, may be made definite and valid by a separation, delivery, or taking possession under the mortgage, *Morrow v. Reed,* 30 Wis., 81; *Weld v. Cutler,* 2 Gray, 195; *Crofoot v. Bennett,* 2 N. Y. 258; *Brewer v. Salisbury,* 9 Barb., 511; *Croswell v. Allis,* 25 Conn., 311; *Read v. Wilson,* 22 Ill., 377; *Brown v. Webb,* 20 Ohio, 389; *Williams v. Briggs,* 11 R. I., 476.

*Holmes & Carpenter* for defendant in error. A sale of a stated quantity of logs does not pass title until they are measured and separated from the common mass (*Whitcomb v. Whitney,* 24 Mich., 486; *First Nat. Bank v. Crowley,* id., 492; *Adams Mining Co. v. Senter,* 26 Mich., 73; *Ortman v. Green,* id. 209; *Lingham v. Eggleston,* 27 Mich., 324; *Hahn v. Frederick,* 30 Mich., 223, and cases) and the same rule should govern property covered by a chattel mortgage, *Merrill v. Hunnewell,* 13 Pick., 213; *Young v. Austin,* 6 Pick., 280; *Barry v. Bennett,* 7 Metc., 354; the property should be so described that it may be readily distinguished from other property of the same nature with which it is commingled, *Montgomery v. Wight,* 8 Mich., 143; *Golden v. Cockrill,* 1 Kan., 259; *McCord v. Cooper,* 30 Ind., 9; if it cannot be identified, the mortgage will be void as to third parties, Herman on Chattel Mortgages, p. 89; a mortgage of personal property, as well as of real estate, may be void for uncertainty (*Rood v. Welch,* 28 Conn., 157; *Blakely v. Patrick,* 67 N. C., 40; *Waldo v. Belcher,* 11 Ired., 609) and registration will not make it valid, *Bullock v. Williams,* 16 Pick., 33; *McCord v. Cooper,* 30 Ind., 9; and if oral testimony leaves its meaning indefinite, it will be held void for

uncertainty, *Smith v. Crawford*, 81 Ill., 296; *Colcord v. Alexander*, 67 Ill., 581.

MARSTON, J. The Alpena Lumber Company brought an action of trover to recover the value of certain logs, purchased by defendants below at a mortgage sale.

Both parties claim title through the firm of B. Cushman & Co., the defendants, under two chattel mortgages given January 20th and June 12th, 1874, and a sale thereunder; the plaintiff, under a chattel mortgage given August 14th, 1874, with authority to sell thereunder, given afterwards, and other instruments not necessary to refer to.

. The plaintiff below, defendant in error, was under the undisputed facts clearly entitled to recover, if the two mortgages of January 20 and June 12 were void for uncertainty. The court instructed the jury that they were void, and this is the only question we consider of any present importance. It appeared that at the time these two mortgages were given, B. Cushman & Co. had a large quantity of logs in Thunder Bay River; that in January, 1874, they had over a million feet of logs marked O dot K, and that on the 20th of that month they gave Julius Meyers a chattel mortgage on "one hundred thousand feet of white pine saw logs, now on the North Branch so called of Thunder Bay River." These logs were farther described as having been cut during the winter of 1873–4, but the particular logs mortgaged, or intended to be, were in no way designated, described or separated from the entire mass bearing the same mark. B. Cushman & Co. also had a large quantity of logs marked O K, and on the 20th day of June, 1874, they gave A. Anspach & Co. a chattel mortgage on "one hundred thousand feet (board measure) white pine saw logs marked O K, now lying within the limits of Thunder Bay River Boom Company."

The particular hundred thousand feet intended to be covered by this mortgage were in no way separated or designated from the mass bearing the same mark.

The parties under whom the Alpena Lumber Company claimed title acquired chattel mortgages on all the logs bearing these marks August 14th, 1874. Some time in the fall of 1874, about the last of October, the sheriff of Alpena county took possession of a quantity of the O K and O dot K logs, and it is claimed with the consent of the mortgagors. No attempt had been made up to this time by either the mortgagors or mortgagees to take possession, or separate or designate in any way from the common mass any of the logs intended to be embraced in the Meyers or Anspach & Co. mortgages. Third parties therefore having acquired rights in and to all the logs bearing these marks, prior to the time the sheriff took possession of any logs, and prior to the time of any separation thereof,—as against such third parties can these mortgages be held valid and effectual?

It will thus be seen that the question as to whether these mortgages are void for uncertainty or not, does not arise between the mortgagor and mortgagees, and it must also be borne in mind that while one hundred thousand feet of logs taken as they would run, from a larger quantity put in from off the same lands might be but an average in quality and value, yet that one hundred thousand feet could be assorted from amongst the common mass that would average in quality and value much higher than those remaining, and so there could be a like quantity taken out that in quality and value would be very much below an average. This case, therefore, does not call for any opinion as to what the law would be in a case arising between the mortgagor and mortgagee, where the rights of third parties had not intervened, or in a case where no discrimination could be made in taking a part out of a larger undivided quantity, as grain in a bin or elevator. It is not the intention, therefore, to intimate what the rule would be in such cases.

It is evident that after third parties have acquired rights in such a case very serious questions might arise

in carrying out such a mortgage. If the mortgagee should attempt to take possession of the quantity described, would he have a right to assort and take such logs as he thought proper, or would the mortgagor be the person to make the selection, or both together? If the mortgagee was the proper person, would he not be most likely to pick out and take the most valuable, and if the mortgagor was the proper party to make the selection, he might take the other extreme and point out those of least value, while if both should act in concert and disputes arise between them, which would have the right to control? Or if they did agree, might they not make a selection entirely different from the one contemplated at the time the mortgage was given, for the purpose of injuriously affecting the rights and interests which third parties had in the meantime acquired in the property? It is clear that if the parties interested are to make the selection, then the persons who have, intermediate the date of the mortgage and the time of selection acquired interests, should be consulted and take part, and if a number of persons have thus acquired distinct and separate interests, all would have to be called in and would have a right to participate in the selection. This, to say the least, would result in such a diversity of interests that an amicable adjustment would hardly be within the range of possibilities. There would be but one other course left open and that would be to in some way take an average from the entire lot, both in quantity, quality and value. The quantity might be taken of an average value, which would be very unfair, as the best and the poorest logs might be selected to make the quantity taken average in value with the entire mass. It may be said that an average quantity should be taken from the entire lot as found in the river. But from what part of the entire lot should they be taken,—from the front, the rear or the centre of the drive? It may be said there would be no difference, but this is not true; owing to the current, the quantity of water, and from other causes, logs

of a certain kind, size and quality do not come down as fast as others, so that after the logs have been driven within the boom limits a very great difference will be found to exist between the quality and value of the logs in the front and those in the rear of a drive. It seems to me that serious difficulties must inevitably arise in any aspect of the case in attempting to carry out such an agreement.

As well might we undertake to enforce a chattel mortgage given upon a pile of lumber in a certain yard containing fifty or a hundred piles, or given upon twenty sheep in a flock of one hundred, or upon ten head of cattle in a drove or herd of fifty. To sustain such mortgages would, I think, enable parties to commit gross frauds, and would also tend to prevent third parties from afterwards purchasing or acquiring interests in the property, a part of which had been thus mortgaged, and thus tend to discourage trade.

Had the parties attempted to make an absolute sale of the property described, as in this case, and nothing farther had been done thereunder, it is clear, within previous decisions of this court, such a sale could not be sustained. I can see no good reason for any distinction. It is true that a mortgage upon property is but a mere security for the debt and that the title to the property remains in the mortgagor. After condition broken, however, when the parties are likely, if at all, to disagree, the mortgagee has the right to take possession and sell the property, so that what at first was but a mere security has thus passed into an absolute sale.

I think the authorities cited in the brief of counsel for defendant in error, from this State as to a sale, and from other States as to a mortgage, fully sustain the position taken in the court below that these mortgages could not be sustained on account of uncertainty.

The judgment must be affirmed with costs.

The other Justices concurred.