| 45 | 591 |
| 114 | 407 |

CHARLES W. RICHARDSON ET AL., GARNISHEES OF THE ALPENA LUMBER COMPANY, AND JESSE P. BISHOP AND JOHN G. BEEKMAN, ASSIGNEES v. ENOCH ROGERS FOR THE USE OF SAMANTHA HITCHCOCK.

*General assignment for an insolvent corporation—Assignments executed in other States.*

If an assignment for the benefit of creditors contains a power to sell on credit, it is void as against the garnishment of a judgment recovered by the insolvent, though it may be valid as against the assignor and also as regards creditors and others not seeking to avoid it.

An assignment for the benefit of creditors executed in another State but with express reference to Michigan and intended to have its first operation in Michigan, is to be treated, in passing upon its validity, as if originally executed in Michigan.

A general assignment by an insolvent corporation was executed by the directors, and next day, by their direction, the president executed another, incorporating the first, in another State where the property was. The assignees accepted and acted upon the trust and no attempt was made to set it aside, but more than a year later the president was directed, at an informal meeting of directors, to execute another assignment, the former being supposed defective. *Held* that the last assignment could not be sustained, not being made by direct sanction of the corporation, and the power first delegated to the president being insufficient as it was already exhausted.

Whether the president of a corporation has authority to execute a general assignment for the benefit of its creditors.—Q.

Error to Alpena.  Submitted Jan. 27.  Decided April 13.

GARNISHMENT.  The assignees of the principal defendant bring error.  Affirmed.

*J. D. Holmes* for plaintiffs in error.  The acts of directors of a corporation may be valid though done at informal meetings:  Field on Corp. § 235; *Samuel v. Holladay* 1 Wool. 400; directors may act separately without a board meeting:  *Bank of Middlebury v. Rutland etc. R. R.* 30 Vt. 159.

*Kelley & Clayberg* for defendants in error.  A general assignment permitting the assignee to sell on credit is void :  *Ryerson v. Eldred* 18 Mich. 12; a corporation cannot exercise acts in another sovereignty except by the latter's permission:  *Cin. Mut. H. A. Co. v. Rosenthal* 48 Ill. 85; or until authorized by the State in which it was incorporated :  *Bank of Augusta v. Earle* 13 Pet. 519; Field on Corp. 254; a voluntary assignment made abroad and substantially inconsistent with home statutes should not be put in execution at home to the detriment of the citizens; but for all other pur poses, if valid, it should be operative :  *Bentley v. Whittemore* 19 N. J. Eq. 462; *Moore v. Bonnell* 31 N. J. L. 98;

*Ingraham v. Geyer* 13 Mass. 146; *Zipcey v. Thompson* 1 Gray 245; *Boyd v. Rockport Mills* 7 Gray 406; *Benedict v. Parmenter* 13 Gray 88; *Graydon v. Church* 7 Mich. 36; *Wood v. Parsons* 27 Mich. 159; *Burrows v. Keays* 37 Mich. 430; *McEwan v. Zimmer* 38 Mich. 765; a second assignment, therefore, could cover no property unless subsequently obtained: *Brennan v. Willson* 71 N. Y. 502; *Hone v. Woolsey* 2 Edw. Ch. 289; Bump Fraud. Conv. 333; Burrell on Assignments § 354.

GRAVES, J. The Alpena Lumber Company is a domestic corporation which was organized for manufacturing purposes under our general law, in the year 1874. It recovered a judgment in the circuit court for Alpena county against Richardson & Co. for about a thousand dollars and the judgment was affirmed in this court at the January term for 1879: 40 Mich. 203.

During the pendency of that suit the corporation claimed to be insolvent and took measures to assign all its property to Bishop and Beekman for the benefit of its creditors.

The proceedings to accomplish this end were singular. The directors met at Cleveland in the State of Ohio on the 27th of July, 1877, "and finding that the company was unable to meet its paper at maturity" unanimously resolved that it " make an assignment of all its property and effects both real and personal to Jesse P. Bishop of Cleveland, Ohio, and John G. Beekman of Alpena, Michigan, for the equal benefit of the creditors of said company" and that the president proceed to " execute on behalf of the company the necessary papers." In pursuance of this resolve an instrument was forthwith drawn up and executed. It purported to convey to Bishop and Beekman the entire property and effects of the corporation in Ohio, Michigan and elsewhere upon trust for the equal benefit of all the creditors. But it provided, expressly, that the assignees might sell at public or private sale upon such terms as they might deem for the best "interest of the creditors, and either for cash or upon reasonable credit as they might deem best, and that they

should have the right to manufacture lumber from the pine logs assigned in case they should consider it for the interest of the creditors so to do in order to dispose of the same to the best advantage."

Bishop immediately endorsed his acceptance. But during the forenoon of the next day, namely July 28th, the directors met in the city of Detroit and unanimously ratified the action had at the Cleveland meeting and directed the president to renew the execution of the instrument there made. In compliance with this direction a formal paper was executed incorporating the first, and constituting a complete Michigan transaction. The assignees immediately endorsed their acceptance of the trust contained in it, and both papers were soon after recorded in the office of the register of deeds. As soon as the transaction was completed by the ratification and re-execution on the 28th, the assignees assumed exclusive possession of the general property, and have since continued to handle it, the corporation not having had any control whatever. A large portion was disposed of.

After the lapse of some fifteen months during which time the assignees were proceeding in the execution of the trusts the corporation was informed that the transaction was not sufficient to bind Michigan creditors and that they might avoid it on the ground that power was given to dispose of the assets on credit. Influenced by this advice, the directors came together at Cleveland in an informal way on the 14th of November, 1878, but not as a meeting of the board, and a conference was had about making a new assignment. The result was that the president was directed by general consent to make one, and a third instrument was then executed and accepted by the assignees. It was framed as an original assignment and made no reference to prior transactions. There was no re-assignment by the assignees nor any interference with their dispositions or possession and, so far as appears, no creditors had refused to acquiesce in what had been done. The instrument assumed to express its purpose in these terms: "The object of this conveyance being to include all the property and effects of said company of every

kind and wherever situated, to have and to hold the same to said Bishop and Beekman and their successors for the equal *pro rata* benefit of the creditors of said company, with full power on the part of said trustees to sell and dispose of all said property and effects and convert the same into money for the purposes aforesaid."

The defendant in error, being a Michigan creditor of the corporation, and having brought suit for the demand in the circuit court for the county of Alpena, proceeded in January, 1879, against Richardson & Co. as garnishees, and they in due time appeared and made disclosure. They admitted their indebtedness under the judgment but were unable to say whether it was payable to the corporation or to the assignees; and the latter at once intervened as claimants and denied the right of the garnishee plaintiff to intercept the fund. The controversy was brought to issue and tried before a jury, and the circuit judge directed a verdict against the assignees and they allege error. The whole evidence is returned, and the first question is whether, on their own showing, they made a case on which the jury could have found in their favor under a proper view of the law, because if they did not the result is correct.

The whole foundation of their right is the proceeding by the corporation and its officers to transfer the judgment and other property for the benefit of creditors.

The plaintiffs claimed that they were lawfully vested with the title, by means of the assignment, and it was incumbent on them to establish this claim. They were bound to show a good title, not merely as against the corporation or passive creditors, but as against the defendant in error who by proper adverse proceedings had put the question to the proof.

There is no occasion to discuss the influence of foreign law or the obligations of comity. The paper made on the 28th of July was executed here and was in every respect a domestic transaction. As against the attachment of the judgment under the garnishee process it is void in conse-

quence of the power inserted to sell on credit: *Sutton v. Hanford* 11 Mich. 513.

If the paper made the day previous in the state of Ohio can be said to have a distinct existence, it is of no greater force in this contention than the other. Granting all that can be claimed for it as an intended disposition of Michigan property, and it must be then admitted that it was made with express reference to this State, and with the positive intent that its first taking effect on such property, including the judgment in question, should be in this State. The object was to convey the entire assets found here, and the executory operation of the instrument as a conveyance of such assets was meant to take place here. For the purpose of deciding on its validity in this controversy it must be viewed as though it had been made in this State.

It remains to notice the third paper executed by the president of the corporation in Ohio nearly a year and a half later. This paper was made without any direct sanction of the corporation. The assignees contend that it was authorized by the resolution of the directors on the prior occasion. The explanation is that the president was then directed to provide and execute valid papers and, having failed, the duty and power remained. On this ground it is claimed that the last assignment was an act of the corporation and a lawful transfer. The facts exclude all implication of a purpose that the president should execute any general assignment for the benefit of creditors on his own authority, and we are not satisfied that he had power to do so.

The case is certain that there was to be no transfer except as ordered by the directors. Can this last instrument be referred to the resolution made by the directors in July, 1877, for the purpose of making out title in the assignees against this creditor for the corporation? The Court think not. The power conveyed by the resolution was acted upon, and the assignments made under it were valid against the corporation and valid, also, as regards creditors and others not attempting avoidance. And for the year and some months elapsing between the transactions, and during which period the

assignees exercised full control, there was no attempt to avoid or defeat the transfer. Moreover the assignees never restored anything or offered to renounce their trust or waive any right. They were not disturbed and they proceeded as though an avoidance of the transfer was impossible.

Under these circumstances it is the opinion of the court that the power given by the directors was exhausted before the last paper was made and that as no new delegation of power took place, the assignees cannot make title to the judgment on the strength of that paper against the garnishee plaintiff.

The result is that the assignees failed to make their claim good and hence the judgment must be affirmed with costs.

The other Justices concurred.