## Dodds v. Neel,

1. MORTGAGE: *Description of property.*

A mortgage of a specified number of articles out of a larger number, will not be good against creditors of the mortgagor and others acquiring adverse rights, unless it furnishes the data for separating the mortgaged part from the mass.

APPLICATION: In 1879 N. conveyed to B. a farm for $5,610, payable in six equal annual installments. B. then conveyed the land and ten bales of each annual crop of cotton to be produced on it for the six years, to a trustee to secure the payments, with power to take possession and sell on default of payment. In 1881 N. took possession of ten bales, including three made by a tenant of B., to pay the installment for that year. The tenant had mortgaged his whole crop of that year to D. for supplies. *Held:* That the first mortgage was void for uncertainty as against D., the second mortgagee, and he could maintain replevin against N. for the three bales.

APPEAL from *Jefferson* Circuit Court.

Hon. X. J. PINDALL, Circuit Judge.

*McCain & Crawford* for appellant.

1. The reservation of a lien on *10 bales of cotton* out of a crop is indefinite and void for uncertainty. *Jones on Chat. Mortg. Sec. 46 et seq; 40 Mich. 203; 67 N. C. 49; Williamson v. Steele, 3 Lea. Tenn., 527.* If it had said "the first ten bales gathered," or had otherwise identified the cotton it would have been good; *56 Ala., 544; 11 Ala., 979; 57 Miss., 277.*

2. Conceding Neel's equitable lien, he has no such lien as can be asserted against Dodds and as a defense to this suit. *35 Ark., 174, 323; 27 Ib. 231; 30 Ark., 120.*

*Washington v. Love, 34 Ark.,93,* was affirmed on the whole record, because substantial justice seemed to have been done; besides there was a sort of separation of the three bales of cotton. The instrument there was a mortgage, here it is only a lien.

Comment on *Buck v. Lee, 36 Ark., 525,* and *Bloom v. Meyer, 37 Ark., 43,* and contend that the rule there laid down, if correct, does not extend to a case like this, when there is no claim to any particular property, but simply to ten bales out of an entire crop, on a place cultivated by different tenants.

A mere equitable lien such as Neel had, if he had any, should have been worked out through a court of equity. Judge Walker in *Robinson v. Kruse, 29 Ark.,578,* announces a healthy proposition, when he said: "Like other inchoate rights, they must be asserted and perfected under the provision of the law."

If Neel had any equities against Bertrand he would have none against either Mackey or Ivans or Dodds, unless he proved that they had actual notice. Even if Dodds had notice, there is no proof that the tenants had. A purchaser with notice from one without notice is an innocent purchaser. *21 Ark., 202.*

*Bell & Elliott,* for appellee.

The claim of Neel to the cotton is founded on a deed executed by both Neel and Bertrand, in which not only a lien is reserved, but Bertrand conveys the ten bales as fully "as if a separate paper was executed;" Neel had not only the right to make his money out of the cotton, but the right to immediate possession in case of default; it was in fact a mortgage back to the vendor of so much cotton.

It is impossible to definitely describe in mortgages of future crops, what is not *in esse;* the mortgage covers the

whole crop and the mortgagee has the right of satisfaction
out of any part of it.

The record of the mortgage was notice to the tenants, and
the *cestui que trust* had actual notice.

When one has a lien, and gets possession, a junior mort-
gagee or purchaser cannot replevy without first paying off
the lien. *36 Ark., 525; 37 Ib. 43.*

In *Washington v. Love, 34 Ark., 93,* it was held, that.
replevin would lie for *three bales* of cotton out of a crop.
Here Neel's mortgage calls for *ten bales,* and he took all
that was left.

1. MORT
GAGE:
Descrip-
tion of
property.

SMITH, J.   By indenture duly executed and acknowledged
by both parties and recorded, Neel in the year 1879, con-
veyed to one Bertrand a plantation in Jefferson county.
The consideration was $5,610, divided into six equal annual
installments.   The deed reserved a lien on the land and on
ten bales of merchantable cotton, to weigh five hundred
pounds each, out of the crop to be raised each year on the
place.   Bertrand covenants to deliver this quantity to a des-
ignated trustee, to be sold in market and the proceeds to be
applied upon his debt.   If he fails to meet the installment
in any year when it falls due, and likewise fails to turn out
the cotton, the trustee is empowered to take charge of the
ten bales of cotton produced on the premises and after
advertisement sell the same by public auction.

In 1881 the plantation was let to farm in parcels to
various tenants.   Two of these tenants mortgaged their
crops to Dodds, a merchant, for supplies.   Some eighteen
or twenty bales were made upon the whole place.   The
installment of purchase money for that year remaining un-
paid, Neel, without the knowledge or consent of any per-
son interested, hauled away in his wagon twelve bales of
cotton, aggregating five thousand, six hundred and twenty-
six pounds.   In this lot were included three bales of the

crop raised by the tenants, upon which Dodds held a mort-
gage. Dodds brought replevin for the three bales, and
Neel justified their seizure under the reservation of lien in
his deed to Bertrand.

On the trial, which took place before the circuit court, a
jury being waived, the plaintiff objected to the introduction
of this deed, because it described no particular cotton. But
his objection was over-ruled. The court found that Neel
held a prior lien on the cotton, which could be asserted in
an action at law, and gave judgment accordingly.

If this were a contest between Neel and Bertrand, we
should be inclined to uphold the description as effectual.

Thus, in *Gurley v. Davis, 39 Ark., 394,* this court went
to a great length in sustaining a vague and indefinite descrip-
tion of mortgaged chattels, no one except the immediate par-
ties to the instrument being concerned. But when creditors
of the mortgagor, or others dealing with the property, have
acquired adverse rights, a mortgage of a specified number
of articles out of a larger number, will not be allowed to
prevail unless it furnishes the data for separating the prop-
erty intended to be mortgaged from the mass. *Jones
Chattel Mortg., Secs. 56, 59,* and cases there cited ; *Rich-
ardson v. Alpine Lumber Co., 40 Mich., 203.*

The case of *Williamson v. Steele, 3 Lea.; (Tenn.,) 527,*
is in point. That was replevin for two bales of cotton.
The plaintiff claimed under a mortgage, which purported to
convey so much of a growing crop as would be sufficient to
make two bales of lint cotton, each not weighing less than five
hundred pounds. The defendant had caused an execution,
against the mortgagors, to be levied on the cotton in con-
troversy while it was still unginned, and before it had been
delivered to the mortgagee. It was the intention of the
mortgagors to have the seed cotton which was levied on,
ginned, made into two bales and delivered to the mortgagee ;
but this intention had not been communicated to either of

the parties to the action. The mortgagors had raised in all seven bales, but had already sold five in market without the plaintiff's knowledge. And it was held the execution creditor had the better right. Cooper J., in delivering the opinion of the court, said: "When only a certain quantity of articles of the same character, such as cattle, grain in bulk, or a particular crop, is undertaken to be conveyed, no title can pass until the quantity is selected and set apart; until selection made, the whole property would be subject to execution by the grantor's creditor. For what is sold is not separated from that which is not sold, and the grantee has no title in any particular property for which he could bring an action. The grantee, under the deed before us, has no right to select any particular part of the cotton raised to the extent of the quantity necessary to make two bales, and assert title thereto, against the grantor's creditors acquiring liens on the crop. If he could do so, as to the seed cotton levied on by the defendant, he could equally select his two bales from the five previously sold. His right would be ambulatory, to suit his convenience or his caprice.    *   *   *

It is the fact that no title passed or could possibly pass, to any of the cotton until designated by the selection of the grantor's, that gives the creditor the better right."

Doubtless the vendee may mortgage back not only the lands he has purchased, but the annual crops to be produced thereon during a series of years. But in order to affect creditors or subsequent purchasers or others who have acquired rights in these crops, with notice of the lien, the subject-matter of the mortgage must be described with sufficient certainty to distinguish the property intended to be conveyed and to identify it. If the reservation here had been of a lien upon all, or any aliquot portion of the crops of cotton, or even the first ten bales gathered on the place, a different question would have been presented. See *Robinson v. Mauldin, 11 Ala., 977; Stearns v. Gafford, 56 Id., 544.*

The case of *Washington v. Love, 34 Ark., 93*, was affirmed upon the whole record, because it seemed that substantial justice had been done. In that case there was also a sort of separation of the three bales of cotton, or what the court deemed such. Here there was none.

The authority vested in the trustee by the deed was the usual authority to take charge of and sell the cotton upon default in payment. It was probably never intended to confer upon him any power of selection with a view to identify the mortgaged property. But if the language used admits of this construction, then the trustee and not the beneficiary was the proper person to exercise the power. In seizing the cotton, Neel was a trespasser.

Reversed and a new trial ordered.