### HOUSE v. LEFEBVRE.

1. CONFLICT OF LAWS—CAPACITY OF MARRIED WOMEN TO CONTRACT.
    The capacity of a married woman to contract is governed by the law of the place of making the contract rather than the law of her domicile.

2. SAME—PLACE OF MAKING A CONTRACT A QUESTION OF QUALIFICATIONS.
    The determination of the place of making a contract is a question of ''qualifications'' and is a preliminary question governed by the law of the forum.

3. CONTRACTS—PLACE OF MAKING.
    Generally speaking, a contract is deemed to have been made in the State where the last act necessary to make it a binding agreement took place.

4. BILLS AND NOTES—PLACE OF MAKING A PROMISSORY NOTE.
    In the case of a promissory note, the place of contracting is where the note is first delivered for value.

5. SAME—MARRIED WOMEN—CONFLICT OF LAWS.
    Promissory note, executed by husband and wife in Michigan for delivery by him in Ohio where he delivered it to payee for value was an Ohio contract and, as such, binding upon wife in Michigan.

---

Capacity to contract is determined by law of place where supposed contract was entered into, see Restatement, Conflict of Laws, § 333.

That determination of place where contract was made is a preliminary question to be determined by law of the forum, see Restatement, Conflict of Laws, § 311.

That contract is deemed to be made at place where last effective act is done, see Restatement, Conflict of Laws, § 312 et seq.

Appeal from Wayne; Moll (Lester E.), J. Submitted October 8, 1942. (Docket No. 46, Calendar No. 41,998.) Decided November 24, 1942.

Assumpsit by James H. House, ancillary administrator of the estate of J. D. Salvail, deceased, against Cora A. Lefebvre on a promissory note. Judgment for plaintiff. Defendant appeals. Affirmed.

*James W. Wilson* (*Rosenburg, Painter & Navarre,* of counsel), for plaintiff.

*John P. Murphy,* for defendant.

Sharpe, J. This case involves an action upon a promissory note. The facts have been stipulated and are as follows:

On or about April 20, 1927, Arthur Lefebvre and Cora Lefebvre executed the following promissory note:

"Toledo, Ohio, April 20, 1927, ninety (90) days after date we promise to pay to the order of J. D. Salvail, three thousand and no/100 ($3,000) dollars at Toledo, rate 6 per cent. per annum. Value received. (Signed) Arthur Lefebvre, Cora Lefebvre."

At the time the note was executed and delivered, the makers were residents of Michigan and the payee was a resident of Ohio. The note was executed by Cora A. Lefebvre at the city of Detroit, Michigan, at the request of her husband, Arthur Lefebvre. It was taken personally by Mr. Lefebvre to the city of Toledo, Ohio, and there delivered to J. D. Salvail. At this time, the consideration for the note, *i. e.,* $3,000 cash, was delivered by J. D. Salvail

to Mr. Lefebvre.  Defendant, Cora A. Lefebvre, did not receive for her own use any of the cash proceeds of the note; and it is agreed that she was surety for her husband on the note.

J. D. Salvail died May 15, 1928, a resident of Ohio, and James H. House was appointed ancillary administrator of his estate by the probate court of Wayne county, Michigan, and brought this action against Cora A. Lefebvre on the note.  It was also stipulated in the circuit court that certain payments had been made on the note, and that there was due and owing $4,650 principal and interest plus six per cent. interest from December 20, 1939.

It was stipulated by both parties:

"That the legal issue to be determined by the court is whether, under the facts stipulated above, the said contract is an Ohio contract, or whether said contract is a Michigan contract.

"That if said contract is an Ohio contract, it shall be construed according to the laws of the State of Ohio and under the laws of the State of Ohio, said contract is a valid and binding obligation against defendant, Cora A. Lefebvre, and plaintiff is entitled to judgment in this court.

"That if said contract is a Michigan contract it shall be construed according to the laws of the State of Michigan and under the laws of the State of Michigan said contract is unenforceable against Cora A. Lefebvre, and defendant is entitled to judgment in this court."

The trial court held:

"It is my opinion in the instant case that the law of the State of the delivery of the note controls. True, the defendant after executing the note in Michigan turned it over to her husband in Michigan but for delivery in Ohio.  She must be deemed to have understood the nature of the transaction and

the fact that the note was to be delivered in Toledo, Ohio, where the money was paid to her husband. Defendant's husband was the agency or the means of transmittal by which defendant's delivery of the note in Toledo, Ohio, characterized the transaction as an Ohio contract.''

Defendant contends that the contract is a Michigan contract because the transaction so far as she was concerned was completed and terminated in Michigan; that she did not have the legal capacity in the State of Michigan to bind herself or her separate estate by signing the note; and that so far as her separate estate is concerned, the note was void in all jurisdictions.

Defendant relies upon *University of Chicago* v. *Dater,* 277 Mich. 658, as authority to bar recovery upon the note, while plaintiff relies upon *Palmer National Bank* v. *Van Doren,* 260 Mich. 310; *State of Ohio, ex rel. Fulton,* v. *Artie Purse,* 273 Mich. 507; and *State of Ohio, ex rel. Superintendent of Banks,* v. *Eubank,* 295 Mich. 230.

It is well settled that the capacity of a married woman to contract is governed by the law of the place of making the contract rather than the law of her domicile. *Palmer National Bank* v. *Van Doren, supra,* and cases cited therein; *State of Ohio, ex rel. Fulton,* v. *Artie Purse, supra.*

''The determination of the place of making is termed by the authorities a question of 'qualifications' (see Lorenzen, 'The Theory of Qualifications and the Conflict of Laws,' 20 Columbia Law Review, p. 247), and is a preliminary question governed by the law of the forum. *State of Ohio, ex rel. Fulton,* v. *Artie Purse,* 273 Mich. 507; 2 Beale, Conflict of Laws, p. 1046, § 311.2; American Law Institute, Restatement of Conflict of Laws, p. 395, § 311.'' *State of Ohio, ex rel. Superintendent of Banks,* v. *Eubank, supra,* p. 233.

Nor does *University of Chicago* v. *Dater, supra,* hold contrary thereto. In that case, Mrs. Price, a resident of Michigan, signed a trust deed and certain promissory notes in Michigan. They were mailed to plaintiff in Chicago where, after some delay, the loan was made and the money paid over by check made payable to Mr. and Mrs. Dater and Mr. and Mrs. Price which was cashed in Chicago, Illinois. The majority opinion stated (p. 660):

''The instant case does not involve conflict of laws relative to the construction, force and effect of the instruments, signed or executed in one State to be performed in another, but that of capacity of Mrs. Price to enter into such an obligation in this State.
\* \* \*

''If (this case is governed) by the law of Michigan, it is clear, and is not disputed, that defendant has no personal liability on the note, recoverable from her separate estate.

''Assuming, however, that by the Michigan law of the forum the case is governed by the law of Illinois, it presents the unique situation in the realm of conflict of laws that by the law of Illinois, *Burr* v. *Beckler,* 264 Ill. 230 (106 N. E. 206, L. R. A. 1916 A, 1049, Ann. Cas. 1915 D, 1132), the case is governed by the law of Michigan.''

In *State of Ohio, ex rel. Fulton,* v. *Artie Purse, supra,* Maude Purse and Lida Purse while domiciled in Michigan signed a note which was payable in Ohio, as sureties for their husbands. The wives signed the note in Detroit and then it was delivered for value in Toledo, Ohio. The issue was whether the contract was an Ohio or Michigan contract. We there said: ''The place of contracting was in Ohio, where the note was delivered and the transaction closed.''

See, also, *In re Estate of Lucas,* 272 Mich. 1.

In *State of Ohio, ex rel. Superintendent of Banks,* v. *Eubank, supra,* the defendants, husband and wife,

executed a renewal note in Detroit and mailed the same to the payee, an Ohio bank. We there said (p. 233):

"The case is controlled by the determination of the place of making of the renewal contract which embodied the purported authorization for the entry of judgment, for the validity of a contract is determined by the place of making. * * * Generally speaking, a contract is deemed to have been made in the State where the last act necessary to make it a binding agreement took place. Goodrich, Conflict of Laws (1st Ed.), p. 218; 2 Beale, Conflict of Laws, p. 1045; 1 Williston on Contracts (Rev. Ed.), § 97; American Law Institute, 1 Restatement of the Law of Contracts, p. 80, § 74; *Holder* v. *Aultman,* 169 U. S. 81 (18 Sup. Ct. 269, 42 L. Ed. 669); *Johnston* v. *Industrial Commission,* 352 Ill. 74 (185 N. E. 191); *Gannon* v. *Bronston,* 246 Ky. 612 (55 S. W. [2d] 358, 86 A. L. R. 324). In the case of a promissory note, the place of contracting is where the note is first delivered for value. American Law Institute, Restatement of Conflict of Laws, p. 401, § 320. In 2 Beale on Conflict of Laws, p. 1047, § 312.2, it is said:

" 'Delivery, however, is not the only requisite to the creation of a contract on a negotiable instrument. Value must be given, and until, therefore, there has been a delivery for value, the instrument cannot be said to have had any inception. * * *

" 'It follows that the place of contracting of a contract on a negotiable instrument, be it the obligation of the maker, the drawer, or the indorser, is the place where, after the signature of the party in question, the instrument is first delivered for value. Since no one is bound by the mere signature of the instrument, the place where it may have been dated, executed, or signed is immaterial.' * * *

"We are dealing with a negotiable instrument, and delivery for value is the keynote of its inception."

In the case at bar, the note, while signed in Michigan by defendant, was intended for delivery in Ohio. It was delivered there for value and upon delivery became a binding contract. It is therefore an "Ohio contract" and as such must be construed by Ohio law.

The judgment of the trial court is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.