LIBERTY MUTUAL INSURANCE COMPANY, a Foreign Corporation, Plaintiff,

v.

VANDERBUSH SHEET METAL COMPANY, a Michigan Corporation, Defendant.

Civ. A. No. 9–73775.

United States District Court, E. D. Michigan, S. D.

April 29, 1981.

Paul Joseph Schwab, Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark, Farmington Hills, Mich., for plaintiff.

David John Cooper, Daniel L. Garan, Garan, Lucow, Miller, Lehman, Seward & Cooper, Detroit, Mich., for defendant.

## OPINION

FEIKENS, Chief Judge.

Defendant was a subcontractor on a construction project in Carleton, Michigan. One of defendant's employees, Robert Kertesz, was injured while working on the project. Kertesz recovered a judgment of $158,210 in a negligence action against Toledo Engineering Corporation, the prime contractor. Pursuant to an insurance policy, plaintiff satisfied the judgment entered against Toledo. In this case, plaintiff seeks indemnity under the terms of Toledo's subcontract with defendant. Both parties move for summary judgment.

## I. Res Judicata

In the original action by Kertesz against Toledo, Toledo filed a third-party complaint against defendant for contractual indemnity. Defendant moved for summary judgment. Wayne County Circuit Judge Thomas Roumell granted the motion. The judgment, inscribed on a general, printed form, contained the handwritten notation that it was a "summary" judgment, "without prejudice". Neither party appealed. I find that this judgment does not bar plaintiff from bringing this claim.

Plaintiff's claim was subrogated for Toledo's upon payment of the original judgment to Kertesz. Thus, as Toledo's assignee, plaintiff is barred by the earlier judgment against Toledo on the third-party complaint exactly to the same extent as Toledo would be barred. *See Knowlton v. City of Port Huron*, 355 Mich. 448, 94 N.W.2d 824 (1959); *Glanz & Killian Co. v. Garland Manufacturing Co.*, 53 Mich.App. 210, 218 N.W.2d 791 (1974); 46 Am.Jur.2d *Judgments* §§ 532–33, 51 (1969). On these facts, however, I conclude that Toledo would not be barred from renewing its indemnity claim.

Under Michigan law, summary judgment can be granted for a defendant only if the plaintiff has failed to "state a claim upon which relief can be granted." G.C.R. 117.2. Typically, the motion is accompanied by affidavits, and the plaintiff is given an opportunity to amend his complaint. G.C.R. 117.3. Such a judgment for the defendant bars the plaintiff from relitigating the same claim in another suit. *E. g., Curry v. City of Detroit*, 394 Mich. 327, 231 N.W.2d 57 (1975). *Cf.* G.C.R. 116.1 (grounds for accelerated judgment); G.C.R. 504.2 (grounds for dismissal). On the other hand, the phrase "without prejudice" generally denotes the absence of *res judicata*. *E. g., Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *LaBour*

*v. Michigan National Bank*, 335 Mich. 298, 55 N.W.2d 838 (1952); *McIntyre v. McIntyre*, 205 Mich. 496, 171 N.W. 393 (1919). Thus, a "summary" judgment "without prejudice" appears to be a contradiction in terms.

Neither plaintiff nor defendant has provided much assistance in the interpretation of this hybrid judgment. The briefs submitted on the motion before Judge Roumell presented arguments on the merits of the indemnity claim. Neither party has presented a transcript of the hearing. Plaintiff states that Judge Roumell intended that Toledo be free to proceed on the indemnity claim in a separate suit. Defendant has neither disputed this assertion nor offered an alternate version of what transpired at the hearing.

■ I see no reason why the situation would have compelled a judgment without prejudice. Defendant was not Toledo's insurer. Mich.Comp.Laws §§ 500.106, 500.-3030 (Mich.Stat.Ann. §§ 24.1106, 24.13030 (Callaghan 1972)). A third-party complaint based on contractual indemnity is not precluded by the exclusivity of the Worker's Disability Compensation Act, Mich.Comp. Laws § 418.131 (Mich.Stat.Ann. § 17.-237[131] (Callaghan 1975)). *Ready v. Clark Equipment Co.*, 91 Mich.App. 474, 283 N.W.2d 650 (1979) (per curiam).[1] Third-party complaints are usually permitted in Michigan courts. *See* G.C.R. 204.1(1). Indeed, it could be argued that defendant was a necessary party. *See* G.C.R. 205.1. The state court's reasons for entering judgment are not clear.

■ Even if entry of the judgment "without prejudice" was a simple mistake, the Michigan Supreme Court would not apply the doctrine of *res judicata*. The effect to be given a mislabeled judgment depends upon the circumstances involved. When a party has appealed an order of dismissal, accelerated judgment or summary judgment, and it is clear from the record that a different type of order was appropriate, the Michigan Court of Appeals has generally treated the order as having been of the type which should have been entered. *E. g., Baker v. City of Detroit*, 73 Mich.App. 67, 250 N.W.2d 543 (1976); *Dean v. Department of Natural Resources*, 61 Mich.App. 669, 233 N.W.2d 135 (1975), *rev'd on other grounds*, 399 Mich. 84, 247 N.W.2d 876 (1976); *Jamens v. Shelby Township*, 41 Mich.App. 461, 200 N.W.2d 479 (1972). This is logical. The errors involved in these cases did not produce differences in *res judicata*. When both parties are present, and a case is otherwise ripe for appellate decision, no goal would be served by remanding it for a change in the caption on the order, followed by a second appeal.

If an order is erroneously entered "with" or "without" prejudice, the problem is more difficult. Each party has both a basis for reliance, and a reason for suspicion. When a circuit court erroneously dismissed a complaint "with prejudice" for lack of subject matter jurisdiction, the Michigan Supreme Court held that the plaintiff was not precluded from bringing a new action, even though he failed to appeal the first dismissal. Otherwise, he would have been precluded from litigating his claim in the appropriate forum, because he did not appeal a defective order directing him to do so. *Laude v. Cossins*, 334 Mich. 622, 55 N.W.2d 123 (1952).

■ I have found only one instance in which a party tried to attack a judgment entered "without prejudice" collaterally. The State Court of Appeals refused to permit it to do so, but did not explain its decision. *Stewart v. Michigan Bell Telephone Co.*, 39 Mich.App. 360, 197 N.W.2d 465 (1972). Certainly, the reasons for permitting collateral attack are less compelling when the judgment was entered "without prejudice" than when it was entered "with prejudice". The latter phrase may be confusing when it is used in certain contexts, such as a dismissal for lack of subject matter jurisdiction or for failure to exhaust administrative remedies. The former phrase is less ambiguous. Thus, the failure to appeal may be more easily understood in the latter situation. Also, the consequences

---

1. For further discussion of this conclusion, see Section V, *infra.*

of prohibiting collateral attack are different. If a judgment "with prejudice" is not subject to collateral challenge, a party may lose his claim entirely because he did not appeal. If the judgment was "without prejudice", the only risk is that the same claim may be relitigated. Thus, I conclude that collateral attack of a judgment "without prejudice" should not be permitted, even if the defendant claims that the judgment was a mistake. *See generally Johnson v. Haley,* 357 Mich. 411, 98 N.W.2d 555 (1959); *Meyering v. Russell,* 85 Mich.App. 547, 272 N.W.2d 131 (1978).

This conclusion is supported by several cases in which the defendant appealed a judgment "without prejudice". There is some doubt whether such a judgment can be attacked even on appeal. *Compare McDaniel v. Jackson,* 78 Mich.App. 218, 259 N.W.2d 563 (1977) *and Irwin v. Via,* 2 Mich. App. 375, 139 N.W.2d 893 (1966) *with Bettendorf v. F. W. Woolworth Co.,* 329 Mich. 409, 45 N.W.2d 343 (1951). *But cf. Roberson v. Thomas,* 13 Mich.App. 384, 164 N.W.2d 544 (1968) (suggesting that *Bettendorf* is consistent with *Irwin* ). If it cannot be appealed, it certainly cannot be attacked collaterally. Furthermore, the reasons for applying *res judicata* are not compelling here. If the entry of judgment "without prejudice" was wrong, defendant has failed to look after his own interest in being protected from multiple suits by neglecting to appeal. *See Rose v. Rose,* 10 Mich.App. 233, 157 N.W.2d 16 (1968). The public interest in the conservation of judicial resources has already been undermined by the need to analyze procedural errors which should never have arisen. *See Gose v. Monroe Auto Equipment Co.,* 409 Mich. 147, 294 N.W.2d 165 (1980).

## II. *Collateral Estoppel*

Defendant next contends that ninety per cent of Kertesz's damages were found in the previous litigation to be attributable to Toledo. Defendant argues that plaintiff should be precluded by collateral estoppel from relitigating this fact. It points to two special questions which were answered by the jury in the earlier case:

> If you find that the defendant, Toledo Engineering Company was negligent and that its negligence was a proximate cause of injury or damage to the plaintiff, what is the total amount of plaintiff's damages?
>
> Answer of jury—$150,000.
>
> If you find that plaintiff was also negligent and that his negligence was a proximate cause of his injury or damages, what percentage of the total combined negligence of the plaintiff and defendant, Toledo Engineering Company, is attributable to the defendant, Toledo Engineering Company?
>
> Answer of jury—90%.

 Parties are precluded by collateral estoppel from contesting factual issues previously litigated and determined by a prior judgment. *Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 191 N.W.2d 313 (1971). I find that the issue of defendant's negligence was never presented to the jury. The verdict only determined that Toledo was negligent, and that its negligence was a proximate cause of Kertesz's injury. For the reasons outlined in Section VII, *infra,* I conclude that such findings are of no value to defendant in this litigation. Thus, I do not decide whether the presence of mutuality of estoppel would make this finding binding upon plaintiff.[2]

Michigan recently adopted the doctrine of "pure" comparative negligence. *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511 (1979). In doing so, the Michigan Supreme Court outlined two special

---

2. The question of mutuality of estoppel on these facts is complex. *See, e. g., Caldwell v. Fox,* 394 Mich. 401, 231 N.W.2d 46 (1975); *Howell v. Vito's Trucking and Excavating Co., supra; Indemnity Insurance Co. of North America v. Otis Elevator Co.,* 315 Mich. 393, 24 N.W.2d 104 (1946); *Ellison v. Wayne County* General Hospital, 100 Mich.App. 739, 300 N.W.2d 392 (1980); *Belin v. Jax Kar Wash No. 5., Inc.,* 95 Mich.App. 415, 291 N.W.2d 61 (1980); *Darin & Armstrong v. Ben Agree Co.,* 88 Mich.App. 128, 276 N.W.2d 869 (1979); *City of Mason v. Mason State Bank,* 63 Mich.App. 288, 234 N.W.2d 489 (1975).

verdict forms which could be used in comparative negligence cases. *Id.* at 681–83, 275 N.W.2d 511. The first form asks, in part, "Using 100% as the total combined negligence of the parties . . ., what percentage of such negligence is attributable to the plaintiff?" The second alternative form asks, "[W]hat percentage of the total combined negligence of the plaintiff and defendant is attributable to the defendant?"

In the action by Kertesz, the jury was asked to determine what percentage of the negligence *of Kertesz and Toledo* was attributable to Toledo. This follows the second alternative suggested in *Placek*.[3] The question did not include any reference to negligence attributable to defendant. Defendant had previously been granted "summary judgment without prejudice". It was no longer a party to the suit. It does not argue that the jury ever actually heard evidence of its negligence. Under such circumstances, I must conclude that the issue of defendant's negligence was not determined by the verdict. *See, e. g., Berkaw v. Mayflower Congregational Church*, 378 Mich. 239, 144 N.W.2d 444 (1966), *cert. denied*, 385 U.S. 1035, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967).

■ Defendant maintains that, even if its negligence was not considered, the jury still found that ninety per cent of the negligence was attributable to Toledo. If it was also negligent, its negligence must be understood to be part of the residual ten per cent.

This argument must fail. If defendant was also negligent, then the total quantity of negligence which caused Kertesz's injury was greater by an unknown amount than the total quantity of negligence which was before the jury.[4] Depending upon the size of this unknown additional amount, it could cause the percentage of the total negligence attributable to Kertesz and Toledo to shrink to insignificance. Thus, the only factual issues determined by the verdict are that Toledo and Kertesz were negligent, that the negligence of each was a proximate cause of Kertesz's injury, and that nine times as much negligence was attributable to Toledo as to Kertesz. *Accord, Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902 (9th Cir. 1950).

These factual findings are binding upon plaintiff only if mutuality of estoppel is present. *Howell v. Vito's Trucking and Excavating Co., supra.* For reasons outlined in Section VII, *infra*, I find that these findings, even if true, are immaterial. Therefore, I need not decide the question of mutuality.

III. *Choice of Law*

■ Federal courts follow the choice of law rules of the state in which they sit. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In general, Michigan courts interpret contracts according to the law of the state in which the contract was "made". *E.g., Keehn v. Charles J. Rogers, Inc.*, 311 Mich. 416, 18 N.W.2d 877 (1945). If the

---

3. The instruction was not appropriate in the context in which it was given. Joint tortfeasors remain jointly and severally liable for the damage caused by their negligence, despite the introduction of comparative negligence. *Weeks v. Feltner*, 99 Mich.App. 392, 297 N.W.2d 678 (1980). Thus, Toledo should have been found liable for whatever percentage of the damage corresponded to the percentage of the negligence attributable *either to it or to defendant*. Thus, a proper instruction would have produced a larger verdict against Toledo, if the jury had found defendant negligent, as well.

4. The doctrine of comparative negligence requires the factfinder to quantify negligence. The instruction typically given, at least in

Michigan, is really in the form of a metaphor. Obviously, it seeks comparison of the relative deviance of each party's behavior from the appropriate standard of care. It may also seek some measure of the relative necessity or sufficiency of each party's behavior as a cause of the plaintiff's injury. Neither of these items is subject to actual quantification. Nonetheless, the metaphor which defines the doctrine of comparative negligence seems also to be useful in the analysis of problems which arise under it. For a description of some of these problems in suits involving multiple parties, see Prosser, *Comparative Negligence*, 51 Mich.L.Rev. 465, 503–07 (1953); 57 Am.Jur.2d *Negligence* §§ 433–35 (1971).

contract is to be "performed" in a different state, however, then the law of the latter state governs its interpretation.[5] *E.g., George Realty Co. v. Gulf Refining Co.,* 275 Mich. 442, 266 N.W. 411 (1936).

In order to apply these rules, it is necessary first to define the terms "state of making" and "state of performance". These terms are defined according to Michigan law. *House v. Lefebvre,* 303 Mich. 207, 6 N.W.2d 487 (1942); *State of Ohio ex rel. Superintendent of Banks v. Eubank,* 295 Mich. 230, 294 N.W. 166 (1940); *National Equipment Rental, Ltd. v. Miller,* 73 Mich. App. 421, 251 N.W.2d 611 (1977) (per curiam).

Generally, "state of performance" has been understood to mean the state in which the party who has allegedly breached the contract was obliged to perform. *E.g., Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp.,* 401 F.Supp. 1102 (E.D.Mich.1975); *George Realty Co. v. Gulf Refining Co., supra; Barras v. Youngs,* 185 Mich. 496, 152 N.W. 219 (1915); *Cobe v. Summers,* 143 Mich. 117, 106 N.W. 707 (1906); *Federoff v. Ewing,* 29 Mich.App. 1, 185 N.W.2d 79 (1970), *vacated on other grounds,* 386 Mich. 474, 192 N.W.2d 242 (1971), *motion to file bill of complaint denied on other grounds sub nom. Illinois v. Michigan,* 409 U.S. 36, 93 S.Ct. 29, 34 L.Ed.2d 42 (1972). On at least two occasions, however, the Michigan Supreme Court has implied that the state in which the other party was obliged to perform might sometimes be the relevant state. *Douglass v. Paine,* 141 Mich. 485, 104 N.W.

781 (1905); *Richardson v. Rogers,* 45 Mich. 591, 8 N.W. 526 (1881). The court has never explained why the state of performance should control, or why the choice of governing law should depend upon which party breached the contract.

Further uncertainty results if the contract does not specify where the party alleged to have breached was obliged to perform. In such a situation, I have previously decided that the performance rule should not be applied. *Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp., supra.* The Michigan Supreme Court has created such an exception. *Douglass v. Paine, supra.* More often, however, courts have derived presumptions about where performance was to have occurred from the facts of the particular case. *Frank's Nursery Sales, Inc. v. American National Insurance Co.,* 388 F.Supp. 76 (E.D.Mich.1974); *Bastian Brothers Co. v. Brown, supra; George Realty Co. v. Gulf Refining Co., supra; Federoff v. Ewing, supra.*

In this case, it is not clear how the "state of performance" rule should be applied. Defendant agreed to deliver and install certain items of sheet metal in a building under construction in Carleton, Michigan. Thus, *most* of defendant's performance under the contract was to occur in Michigan. The dispute here, however, centers upon the contract's indemnity clauses. An obligation to indemnify is not easily localized in a particular state.

---

**5.** These rules may soon change. *See Storie v. Southfield Leasing, Inc.,* 90 Mich.App. 612, 282 N.W.2d 417, *leave to appeal granted,* 407 Mich. 908, 285 N.W.2d 39 (1979); *Sexton v. Ryder Truck Rental, Inc.,* 84 Mich.App. 69, 269 N.W.2d 308 (1978), *leave to appeal granted,* 407 Mich. 897 (1979). Among other problems with them, it is difficult to distinguish their results from those of a simple "state of performance" rule only.

In one case, the Michigan Supreme Court suggested that if the state of making and the state of performance are different, questions of the "nature, obligation and effect" of the contract, as opposed to questions of "performance", may still be governed by the law of the state of

making. *Bastian Brothers Co. v. Brown,* 293 Mich. 242, 291 N.W. 644 (1940). In another case, it applied the choice of law rules of the other state. *University of Chicago v. Dater,* 277 Mich. 658, 270 N.W. 175 (1936). On two occasions, courts have applied the law of the state where a product was to be used to determine the contractual rights of the vendor and vendee. *In re American Steel Supply Syndicate, Inc.,* 256 F. 876 (E.D.Mich.1919); *Peter Schuttler Co. v. Gunther,* 222 Mich. 430, 192 N.W. 661 (1923). Because these approaches have not been followed in later contracts choice of law cases, they are not examined here.

■ The decisions which presume that performance was to occur in a particular state probably support application of Ohio law. A contractual obligation to pay money is generally to be performed in the state where the creditor resides. *E.g., Bastian Brothers Co. v. Brown, supra; Douglass v. Paine, supra.* Toledo is an Ohio corporation. Thus, at least if defendant's other obligations under the contract do not affect the question, most of these cases imply that Ohio law should govern. On the other hand, a surety agreement was once interpreted according to the law of the state where the construction project was to occur. *Title Guaranty & Surety Co. v. Witmire,* 195 F. 41 (6th Cir. 1912). The project here was built in Michigan. This suggests that Michigan law should be applied. Even a third approach is possible. An indemnitor may be obliged to perform wherever the indemnitee was found liable for damages. Because Toledo could have been liable in various states, it could be argued that there is no single state where the indemnity clause was to be performed.

None of these cases explains the rationale either of the "state of performance" rule or of its application in specific situations. I remain uncertain how the Michigan Supreme Court would apply it.

■ The "state of making" rule is also ambiguous. It is generally stated that a contract is "made" in the state where one party accepts the binding offer of the other party.[6] *E.g., Schantz v. Mott,* 242 Mich. 642, 219 N.W. 634 (1928); *Amos v. Walter N. Kelley Co.,* 240 Mich. 257, 215 N.W. 397 (1927); *Dudley A. Tyng & Co. v. Converse,* 180 Mich. 195, 146 N.W. 629 (1914); *Lake States Engineering Corp. v. Lawrence Seaway Corp.,* 15 Mich.App. 637, 167 N.W.2d 320 (1969). Unfortunately, it is impossible in most cases to reconstruct years later which party is more aptly labeled the "offeror", and which is more aptly labeled the "offeree". *See, e. g., McLouth Steel Corp.*

*v. Jewell Coal & Coke Co.,* 570 F.2d 594 (6th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978); *Mott v. Rowland,* 85 Mich. 561, 48 N.W. 638 (1891); *Lake States Engineering Corp. v. Lawrence Seaway Corp., supra.*

In this case, the documents which comprise the contract are printed forms and typed pages on Toledo's letterhead. The bottom of the first page contains the following printed statement: "The Signing and Returning to Buyer (i. e., Toledo) by Seller (i. e., defendant) of the Acknowledgment Copy Shall Constitute Acceptance by Seller of This Purchase Order and of All of its Terms and Conditions." If taken at face value, this statement would suggest that defendant "accepted" Toledo's contract "offer" at its office in Detroit. This would lead to application of Michigan law.

Nonetheless, a typed statement on the same page leads me to reject this analysis. The description of the contract goods begins with the following reference: "CONFIRMING VERBAL ORDER GIVEN TO YOUR MR. OWENS ON 12–1–72 REFERENCE YOUR VERBAL QUOTATION OF THE SAME DAY AND YOUR FORMAL QUOTATION OF 11–30–72." Although the full meaning of this statement is not clear, it apparently refers to an earlier telephone conversation between representatives of Toledo and defendant. It implies that the parties agreed to the terms of the contract before the documents were executed. In such a case, the conversation would need to be recounted in order for the "offeree" to be identified. *See, e. g., Dudley A. Tyng & Co. v. Converse, supra.* Neither party has submitted evidence of this conversation eight and one-half years ago, presumably because none remains. Thus, the "place of making" rule also fails to answer the choice of law question.

■ Under these circumstances, the contract should be interpreted according to

---

6. In cases which involve more than one contract, or both a contract and a tort, the pattern of decisions is more complex. *Compare George Realty Co. v. Gulf Refining Co., supra, with Title Guaranty & Surety Co. v. Witmire,*

*supra, and Douglass v. Paine, supra.* These problems are not present when, as here, the plaintiff states a simple cause of action for breach of contract.

Michigan law. The major consistency among contracts choice of law cases in Michigan is emphasis upon the intent of the contracting parties. In general, Michigan law permits parties to choose for themselves which state's law will govern their contract. *E.g., Rubin v. Gallagher,* 294 Mich. 124, 292 N.W. 584 (1940); *George Realty Co. v. Gulf Refining Co., supra; Millar v. Hilton,* 189 Mich. 635, 155 N.W. 574 (1915); *Douglass v. Paine, supra; John A. Tolman Co. v. Reed,* 115 Mich. 71, 72 N.W. 1104 (1897); *Mott v. Rowland, supra;* Mich. Comp.Laws § 440.1105(1) (Mich.Stat.Ann. § 19.1105(1) (Callaghan 1975)). *But see American Mutual Liability Ins. Co. v. Hanna, Zabriskie & Daron,* 297 Mich. 599, 298 N.W. 296 (1941). Although there is no evidence here that the parties discussed choice of law, the substantive terms to which they did agree lead me to conclude that they would have selected Michigan law, if they had considered the matter.[7] The building was to be constructed in Michigan. Thus, many aspects of defendant's work were to be governed by Michigan law, whatever the terms of the contract. Also, the choice of Michigan law would have given Toledo an opportunity for uniformity in its contracts with all subcontractors working on the project. I do not believe that the parties would have chosen to complicate the contract by injecting "Ohio" indemnity clauses into a transaction otherwise heavily regulated by Michigan law. Application of Michigan law to the interpretation of these clauses better carries out the parties' presumed intentions.

## IV. *Applicable Indemnity Clause*

The subcontract between Toledo and defendant contains two indemnity clauses. The Purchase Order ("PO") contains the following language:

**7.** I find no *explicit* endorsement of this type of analysis in Michigan choice of law cases. In many of these cases, however, I suspect that inferences of this kind influenced decisions explicitly phrased in terms of the "place of performance" or "place of making" rules. *E.g., McLouth Steel Corp. v. Jewell Coal & Coke*

"If Seller [i. e., defendant] is required by the terms of this purchase order to perform or does perform, any work on Buyer's [i. e., Toledo's] premises, Seller agrees that Seller shall be responsible for any damages or injuries to persons or property, including Buyer's employees and property, that occur as a result of the fault or negligence of Seller, its agents, servants, or employees, in connection with the performance of such work, and that Seller shall save harmless and indemnify Buyer from and against any liability for such damages or injuries."

The Purchase Order also incorporates into the contract a document entitled, "General Terms and Conditions" ("GTC"). Those additional terms include the following:

"Contractor [i. e., defendant] shall indemnify and hold harmless the Owner and Prime Contractor [i. e., Toledo] from and against any loss, liability, claim or demand for damages for personal injury, including death and/or property damage arising out of or relating to the performance of this Contract, except when caused by the sole negligence of the Owner or Prime Contractor, his officers, agents or employees."

The General Terms also include a provision to resolve conflicts in the contract:

"In the event of conflict in the Contract Documents, the Scope of Work shall take precedence over the Drawings, these General Terms and Conditions shall take precedence over the Scope of Work, the Special Conditions shall take precedence over the General Terms and Conditions, and the Agreement or Purchase Order shall take precedence over the Special Conditions."

Both the Purchase Order and the General Terms are printed forms used by Toledo in the general course of its business. Neither appears to have been drafted specifically for this contract.

*Co., supra; Title Guaranty & Surety Co. v. Witmire, supra; Bastian Brothers Co. v. Brown, supra; Barras v. Youngs, supra; Douglass v. Paine, supra; Mott v. Rowland, supra; Richardson v. Rogers, supra; Lake States Engineering Corp. v. Lawrence Seaway Corp., supra.*

Plaintiff urges that the GTC indemnity clause governs in this case for two reasons. First, it argues that the PO indemnity clause only applies in situations where the seller performs work on Toledo's premises. This contract required defendant to perform work only at Guardian Industries Glass Plant, in Carleton, Michigan. No work was to be performed at Toledo's office in Ohio.

 I reject plaintiff's interpretation of this clause. Toledo is a general contractor. "Toledo's premises" must be understood to refer to any jobsite under Toledo's control. Otherwise, the indemnity clause would never apply, except when Toledo contracted for work to be performed at its home office. In the context of a construction contract, defendant could justifiably assume that "premises" meant "the jobsite". The language is poorly chosen, but Toledo chose it. Ambiguities in the language of a contract are resolved against the party who drafted it. *E.g., Sroka v. Catsman Transit-Mix Concrete, Inc.*, 350 Mich. 672, 86 N.W.2d 801 (1958); *Michigan Chandelier Co. v. Morse*, 297 Mich. 41, 297 N.W. 64 (1941). Under these circumstances, a literal interpretation of this phrase would be unreasonable.

 Second, plaintiff argues that the two indemnity clauses do not present a "conflict", within the meaning of the third paragraph quoted above. The GTC clause simply provides for broader indemnity than the clause in the Purchase Order. When the two clauses appear in the same contract, application of the GTC clause gives full effect to the PO clause, as well.

This argument has merit. When a contract consists of several documents which must be construed together, the obligations contained in each document should generally be considered to be cumulative. If possible, they should be read in a way which avoids conflict. *See, e. g., Psutka v. Michigan Alkali Co.*, 274 Mich. 318, 264 N.W. 385 (1936). I do not believe that the type of absolute contradiction anticipated by the "conflict of terms" clause is present here.

Both indemnity clauses could be given effect.

Nonetheless, under Michigan law, the Purchase Order indemnity clause must apply. Michigan courts have consistently held that ambiguities in indemnity contracts should be resolved against the indemnitee who drafted the contract. *E.g., General Accident Fire & Life Assurance Corp., Ltd. v. Finegan & Burgess, Inc.*, 351 F.2d 168 (6th Cir. 1965); *In re Traub Estate*, 354 Mich. 263, 92 N.W.2d 480 (1958); *Peeples v. City of Detroit*, 99 Mich.App. 285, 297 N.W.2d 839 (1980); *Robinson v. A Z Shmina and Sons Co.*, 96 Mich.App. 644, 293 N.W.2d 661 (1980); *Gartside v. Young Men's Christian Association*, 87 Mich.App. 335, 274 N.W.2d 58 (1978). Even if this does not present a case of irreconcilable conflict governed by the contract's "conflict of terms" provision, it certainly presents an ambiguity.

Furthermore, Michigan courts have consistently held that indemnity contracts protect an indemnitee against the consequences of his own negligence only if such an intent is clearly articulated. *E.g., Peeples v. City of Detroit, supra; Gartside v. Young Men's Christian Association, supra; Fireman's Fund American Insurance Companies v. General Electric Co.*, 74 Mich.App. 318, 253 N.W.2d 748 (1977); *Hubbert v. Acme Equipment Co.*, 55 Mich.App. 313, 222 N.W.2d 224 (1974); *Meadows v. Depco Equipment Co.*, 4 Mich.App. 370, 144 N.W.2d 844 (1966). Although these cases have all involved the interpretation of a single indemnity clause, the principle applies with equal force here. *See Fireman's Fund American Insurance Companies v. General Electric Co., supra* at 324. The major difference between these clauses is that the GTC clause would clearly indemnify Toledo if both Toledo and defendant were negligent. The PO clause does not mention Toledo's negligence. Thus, the contract *as a whole* does not express the intention to indemnify Toledo for its negligence in "clear and unequivocal terms". *Peeples v. City of Detroit, supra* at 296. As

a result, the GTC clause must be disregarded.[8]

### V. *Exclusivity of Worker's Disability Compensation Act*

In *Darin & Armstrong v. Ben Agree Co.*, 88 Mich.App. 128, 276 N.W.2d 869 (1979), a subcontractor's employee recovered from the prime contractor for injuries received on the job. The prime contractor then sought contractual indemnity from the subcontractor. The Michigan Court of Appeals held that the indemnity clause was insufficient to indemnify the prime contractor for its own negligence. They added:

> Even if the contractual provision could be read, in light of surrounding circumstances, as indemnifying Darin & Armstrong against its own negligence, the provision would be void as against public policy [if it provided indemnity when *only* Darin & Armstrong was negligent]. (Citations omitted). *Nor could the provision be utilized to indemnify Darin & Armstrong for its concurrent negligence; this would be akin to contribution, which is forbidden by Michigan courts where workers' compensation is involved* (emphasis added).

88 Mich.App. at 136, 276 N.W.2d 869. If this was a correct statement of Michigan law, plaintiff's action here would be barred by the exclusive remedy provision of the Workers' Disability Compensation Act, Mich.Comp.Laws § 418.131 (Mich.Stat.Ann. § 17.237 [131] (Callaghan 1975)). I find, however, that the above quotation does not state the law correctly.

In *Darin & Armstrong*, the Court of Appeals cited three cases in support of its conclusion. *Minster Machine Co. v. Diamond Stamping Co.*, 72 Mich.App. 58, 248 N.W.2d 676 (1976), held only that a party found liable for damages based on its "active" negligence has no common law right to indemnification from its joint tort-feasors. The case did not involve the Workers' Disability Compensation Act.

The court's key authority was *Husted v. Consumers Power Co.*, 376 Mich. 41, 135 N.W.2d 370 (1965) (per curiam). In *Husted*, the Michigan Supreme Court ruled that an employer is not liable for *contribution* if his employee is injured through the concurrent negligence of the employer and a third party. Although it is not noted in *Darin & Armstrong*, *Husted* clearly distinguished contribution from contractual indemnity in precisely this context. The court discussed at length *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In *Ryan*, the United States Supreme Court held that contractual indemnity by an injured worker's employer was not barred by the exclusive remedy provision of the Longshoremen's and Harbor Workers' Compensation Act. In *Husted*, the Michigan Supreme Court drew a clear distinction between contractual indemnity, as in *Ryan*, and contribution:

> Thus the only reason the shipowner [in *Ryan*] succeeded with its action for indemnity against the employer was on account of majority finding that the employer had contracted to indemnify the shipowner. In the case before us there is, of course, no claim that Hertel-Deyo [the employer] correspondingly contracted to indemnify Consumers [the other tort-feasor].

376 Mich. at 50, 135 N.W.2d 370. Later, the court emphasized this distinction again:

> Thus if Husted [the employee] could not sue his employer (Hertel-Deyo), and we know he could not, Hertel-Deyo and Consumers cannot be joint tort-feasors by law. Consumers therefore cannot sue Hertel-Deyo for contribution should it be held to respond to plaintiffs in damages
> . . . .
> . . . [Consumers has not] pleaded anything in the nature of an agreement to

---

**8.** Other courts have reached this result on similar facts under California and Illinois law. *MacDonald & Kruse, Inc. v. San Jose Steel Co.*,

29 Cal.App.3d 413, 105 Cal.Rptr. 725 (1972); *Valerio v. R & R Construction Co.*, 20 Ill. App.3d 48, 312 N.E.2d 713 (1974).

**1172**

indemnify, as in the *Ryan Stevedoring Case.*

376 Mich. at 56–57,[9] 135 N.W.2d 370.

 I conclude from my reading of *Husted* that it does not support the proposition for which it was cited in *Darin & Armstrong.* In fact, *Husted* provides strong support for the opposite conclusion. It seems clearly to imply that the Workers' Disability Compensation Act does *not* bar *contractual* indemnity by an employer. Recovery in such a case is not predicated upon the employer's tort liability to the employee. Indeed, the Court of Appeals has permitted such a claim on at least three other occasions. *Ready v. Clark Equipment Co.*, 91 Mich.App. 474, 283 N.W.2d 650 (1979) (per curiam); *McLouth Steel Corp. v. A. E. Anderson Construction Corp.*, 48 Mich.App. 424, 210 N.W.2d 448 (1973); *White v. McLouth Steel Corp.*, 18 Mich.App. 688, 171 N.W.2d 662 (1969). *See Dale v. Whiteman*, 388 Mich. 698, 202 N.W.2d 797 (1972); *Diekevers v. SCM Corp.*, 73 Mich.App. 78, 250 N.W.2d 548 (1976); *Nanasi v. General Motors Corp.*, 56 Mich.App. 652, 224 N.W.2d 914 (1974).

### VI. *Application to Injury of Defendant's Employee*

 Defendant contends that the Purchase Order indemnity clause was not intended to cover Kertesz's injury. It points to the following language:

> Seller [i. e., defendant] agrees that Seller shall be responsible for any damages or injuries to persons or property, including Buyer's [i. e., Toledo] employees and property.

Defendant maintains that the explicit reference to Toledo's employees demonstrates an intent to exclude injuries to defendant's own employees.

Plaintiff has not offered an alternative explanation of this reference to Toledo's

employees. I am not sure why it was included,[10] but I cannot accept defendant's interpretation. Defendant's employees were among those persons facing a foreseeable risk of injury during construction. Toledo's exposure to potential liability for such injuries was high, because defendant was protected from tort liability by the Worker's Disability Act. Under such circumstances, it would be peculiar for Toledo to have indemnified itself, but agreed to an exception in an area in which its vulnerability was so great.

 Moreover, defendant necessarily argues that such an exception to the indemnity was communicated by implication. I refuse to construe Toledo's silence in this manner. General indemnity clauses are frequently interpreted both in Ohio and in Michigan to cover injuries to the indemnitor's employees. *E.g., General Accident Fire & Life Assurance Corp. v. Finegan & Burgess, Inc.*, 351 F.2d 168 (6th Cir. 1965); *Blazic v. Ford Motor Co.*, 15 Mich.App. 377, 166 N.W.2d 636 (1968); *Geurink v. Herlihy Mid-Continent Co.*, 5 Mich.App. 154, 146 N.W.2d 111 (1966); *General Accident Fire & Life Assurance Corp. v. Smith & Oby Co.*, 272 F.2d 581 (6th Cir. 1959); *National Surety Corp. v. Erskine & Sons, Inc.*, 188 F.Supp. 687 (N.D.Ohio 1960); *Dayton Fabricated Steel Co. v. Dayton Town & Country, Inc.*, 99 Ohio App. 309, 133 N.E.2d 423 (1954). I have not found any case in which general language was interpreted to exclude such coverage. Toledo is an experienced contractor. Its silence is best understood as agreement to the typical interpretation of indemnity contracts. Defendant is also experienced in its business. If it intended to assume a narrower obligation, it should have left behind some affirmative evidence of this intent. Defendant has offered no parol evidence. I refuse to read such an exception into the general language of this clause.

9. The third case relied upon in *Darin & Armstrong* is *Jordan v. Solventol Chemical Products, Inc.*, 74 Mich.App. 113, 253 N.W.2d 676 (1977). *Jordan* simply reaffirmed *Husted* after later amendments to the Workmen's Compensation Act.

10. Perhaps Toledo feared that some of its employees would not be covered by the Worker's Disability Compensation Act. *See generally* Mich.Comp.Laws § 418.171 (Mich.Stat.Ann. § 17.237(171) (Callaghan 1975)).

VII. *Indemnity for Joint Negligence*

I have determined that defendant agreed to indemnify Toledo for damages "that occur as a result of the fault or negligence of Seller [*i. e.*, defendant], its agents, servants, or employees." Section IV, *supra*. I have also concluded that Toledo was found to have been negligent, and that its negligence was found to have been a proximate cause of the injuries sustained by defendant's employee. Section II, *supra*. The final issue which I must decide is the application of the indemnity clause to a situation in which both indemnitor and indemnitee may have been negligent.

Neither party has cited any case in which a similar indemnity clause was construed in the context of concurrent negligence. It could be argued that the clause was not intended to cover such situations. Although it might be most consistent with general rules of interpretation announced in other cases, *e. g.*, *General Accident Fire & Life Assurance Corp. v. Finegan & Burgess, Inc.*, 351 F.2d 168, 172 (6th Cir. 1965) ("such contracts when ambiguous are construed strongly against the maker"), I reject such a reading of the contract. Toledo had a clear interest in obtaining contractual indemnity for those situations in which both it and defendant were negligent. In such situations, common law indemnity would not be available. *E.g.*, *Nanasi v. General Motors Corp.*, 56 Mich.App. 652, 224 N.W.2d 914 (1974). It is unlikely that the parties would have agreed to contractual indemnity for only those situations in which it was least necessary. Moreover, if this had been their intent, they probably would have used the term "sole negligence". *But see Chrysler Corp. v. Budd Co.*, 15 Mich.App. 634, 167 N.W.2d 105 (1969) (indemnitee's negligence may preclude it from asserting its contractual right to indemnity).

At the other extreme, it could be argued that the indemnity clause was intended to cover all situations in which defendant was negligent, whether or not Toledo was also negligent. I also reject this construction of the contract. In Michigan, an indemnity contract protects the indemnitee against the consequences of his own negligence only if such an intent is clearly articulated. See cases cited in Section IV, *supra*. The Michigan Court of Appeals has explained the rationale of this rule.

> [It] prevents parties from skillfully devising arguments at a later date that highly malleable, ambiguous language, in fact, evidences the parties' intent that one party should provide indemnity to the other even where it is for the indemnitee's own negligence.

*Fireman's Fund American Insurance Companies v. General Electric Co.*, 74 Mich.App. 318, 324, 253 N.W.2d 748 (1977). Application of the indemnity clause without regard to Toledo's negligence would violate this presumption in favor of strict construction. *But see Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902 (9th Cir. 1950); *Quinlivan v. The Great Atlantic & Pacific Tea Co.*, 395 Mich. 244, 235 N.W.2d 732 (1975).

The general intention of the parties appears to have been that defendant would indemnify Toledo to the extent that Toledo was ever found liable for damages because of defendant's negligence. The contract does not mention concurrent negligence explicitly, but nothing prevents the application of this general intention in such situations. The parties obviously did not anticipate comparative negligence suits. The contract preceded the adoption of comparative negligence either in Michigan or Ohio. *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979); Ohio Rev.Code Ann. § 2315.19 (Page). In Michigan, a defendant in a comparative negligence suit is liable for the portion of the damages, which corresponds to the portion of the total negligence which is not attributable to the injured party. See Section II, *supra*. If the parties had anticipated this type of liability, I conclude that they would have agreed to indemnity for the portion of the judgment against Toledo which corresponds to the portion of the total negligence of Toledo and defendant which is attributable to defendant. This result best implements the parties' general intentions in providing for indemnity.

As I noted in Section II, *supra*, the jury in the first case found that Toledo was negligent, and that its negligence was a proximate cause of Kertesz's injury. If these facts were binding upon plaintiff in this case, they would still have no practical importance. Their only effect would be to preclude plaintiff from receiving indemnity for the *entire* judgment against Toledo. As long as some trivial portion of the judgment was not indemnified, the factual findings of the first case would not be violated. Such a *de minimis* sum must be disregarded.

The motions are denied.