**MILLGARD CORPORATION, a Michigan corporation, Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, a California corporation, Defendant.**

**No. 88–71072.**

United States District Court, E.D. Michigan, S.D.

Feb. 5, 1991.

Walter O. Koch, Troy, Mich., for plaintiff.

## 182

William A. Joselyn, Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S JANUARY 13, 1989 MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

### BACKGROUND

Plaintiff obtained insurance coverage from defendant. Subsequent to obtaining the coverage, two of plaintiff's employees were killed on the job, in the state of Ohio, in an explosion of subterranean gas. Plaintiff settled with the estates of the two deceased former employees for $135,000.00 each. Plaintiff made a claim against the insurance policy. Defendant denied coverage because non-accidents were excluded from the policy and it claimed that the occurrence was not an accident. Plaintiff then brought this action for declaratory relief. On December 23, 1988 defendant filed a motion for summary judgment. Plaintiff, on January 13, 1989 filed a cross-motion for summary judgment.

Subsequent to the filing of the cross-motions for summary judgment and the respective responses and replies, the issue of coverage in the state of Ohio arose. The Court, having reviewed the supplemental briefs on the issue of coverage in the state of Ohio, having heard oral argument, and being otherwise familiar in the premises, finds the insurance contract between the parties includes coverage for operations in the state of Ohio.

### ISSUES PRESENTED

This court is asked to determine two issues with respect to the cross motions for summary judgment. First, the court must decide which state's law to apply to the case *sub judice*. Second, the court must determine whether the occurance which was the subject of the disputed claim was an accident for purposes of the insurance contract.

### ANALYSIS

*a. Conflict of Laws: Determination of State Law Applicable*

█ Plaintiff argues that Illinois law should apply because it was in Illinois that the last act necessary to create the contract was performed. Defendant argues that Ohio law should apply because that is the state where the contract was to be performed. Both parties agree that a federal court sitting in a diversity matter is required to apply the conflict of laws rules of the forum jurisdiction. Defendant concedes that "[u]nder Michigan conflict rules a contract is deemed to have been made in the state where the last act necessary to make it binding took place. *State of Ohio v. Eubank*, 295 Mich. 230, 233–34 [294 N.W. 166] (1940)." Defendant's brief in support of its motion for summary judgment, at 7. Defendant, however, argues "that where the contract is to be performed in a different state, the law of the latter state applies." *Id.*

Defendant relies primarily on *Liberty Mutual Insurance Co. v. Vanderbush Sheet Metal Co.*, 512 F.Supp. 1159 (1981), for the proposition that Ohio law should apply because it was the state of performance. A closer look at *Liberty Mutual* reveals, however, that the state of performance is the state in which the breaching or non-breaching party was *obliged* to perform. *Id.* at 1167. In the case *sub judice*, it is clear that neither party was obliged to perform in Ohio. Defendant asserts that "if Fireman's was obligated to pay the estates of the deceaseds, such payment would be made in Ohio...." Defendant's brief in support of its motion for summary judgment at 8. Whether or not such payment *would* be made in Ohio, there is no doubt that defendant would not have been *obliged* to make the payment in Ohio. Moreover, the *Liberty Mutual* case itself also notes that "if the contract does not specify where the party alleged to have breached was obliged to perform.... the performance rule should not be applied." *Liberty Mutual* at 1167. The court in *Liberty Mutual* went on to say that "an obligation to indemnify is not easily localized in

a particular state." *Id.* There is no question in the case *sub judice* that the contract does not specify where the party alleged to have breached was obliged to perform. Therefore, the applicable law to apply is Illinois law.

### b. The State of Ohio Law at the Time the Underlying Suit was Settled [1]

The court in *Jones v. VIP Development,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984) held that proof of specific intent was no longer a prerequisite in establishing an intentional tort, and that such intent can be inferred if an employer "knows or believes" to a "substantial certainty" that a harm may result from his action or inaction. The effect of *Jones* was to allow an employee to evade the workers' compensation bar and to sue an employer in a suit that was based on allegations of recklessness or injuries arising from an accident. Apparently, in an effort to abate the flood of suits by employees against employers that followed the decision in *Jones*, the Ohio legislature, in 1986, amended the worker's compensation law by adding § 4121.80. Section 4121.80 provides in relevant part as follows:

(G) As used in this section:

(1) "intentional tort" is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.

  * *  * *  * *  *

"Substantially certain" means that the employer acts with deliberate intent to cause an employee to suffer an injury, disease, condition, or death.

  * *  * *  * *  *

(H) This section applies to and governs any action based upon a claim that an employer committed an intentional tort against an employee pending in any court on the effective date of this section and all claims or action filed on or after the effective date, notwithstanding any provisions of any prior statute or rule of law of this state.

The amendments took effect on August 22, 1986 while the Cafferkey and Davis suits (the underlying suits) were still pending. Later that month, each estate amended its complaint to add a third party beneficiary claim. The amendments to the complaints were obviously directed at the possibility that retroactive application of the statutory amendment would lessen the likelihood of recovery in tort.

There was great uncertainty in Ohio concerning the constitutionality of the statute as applied to pending cases. This uncertainty is reflected in an internal memo from John Fick of Fireman's Cincinnati office to Paul Swank of Fireman's Home Office Claims Department concerning the Cafferkey and Davis suits. The memo reads as follows:

Due to the confused status of the new Statute dealing with these cases, it is impossible to predict what will occur. The State courts in the Cleveland area are going forward with jury trials which is contrary to the language of the new Statute. Some of the courts in other areas of the State are merely holding their cases pending a further interpretation of the Statute. We recently were made aware of a case in the Southern Ohio Area where the State court followed the procedures as outlined in the Statute. It is expected that the constitutionality of the new Statute will be challenged at the Supreme Court level.

Memo dated October 8, 1986, Exhibit B to plaintiff's supplemental brief filed June 6, 1989. Trial in the Cafferkey and Davis suits was set for September 27, 1987. On September 16, 1987, Fireman's notified Millgard that it was withdrawing its defense. Fireman's agreed that any settlement by Millgard with the Cafferkey and Davis estates would not prejudice Millgard's right to make a later claim against Fireman's Fund. *See*, Plaintiff's cross motion, Exhibit 6.

---

**1.** The language of this section is closely attributable to plaintiff's supplemental brief filed June 6, 1989.

At the time, it was impossible to predict the outcome of the Cafferkey and Davis cases. Because it had not been alleged that Millgard had specifically intended to injure Messrs. Cafferkey and Davis, the incident was not an intentional tort under the newly amended statute. It was unclear, however, whether retroactive application would be constitutional, and, unlike some state courts, the trial judge had decided to proceed to trial rather than issue a stay pending the resolution of the constitutional issue. Furthermore, if the amendment did not apply retroactively, the *Jones* decision might be the basis of an award ever though the injuries arose from an accident.

Against this background, Millgard was faced with a dilemma. Under the statute and the facts of the case, chances of prevailing for Millgard were favorable. However, if the jury somehow found Millgard liable, the damages could be ruinous for Millgard. While still denying liability, Millgard settled with the estate of Cafferkey and Davis for a total of $270,000. *See,* Releases of Cafferkey and Davis estates, Exhibit C to plaintiff's supplemental brief filed June 6, 1989. Fireman's agreed not to contest the settlement as unreasonable in any future action for indemnification by Millgard. Plaintiff's cross motion, Exhibit 6.

### c. Defendant's Contentions

The defendant relies heavily on *Jones* for the proposition that the deaths of the Millgard employees were intentional and, therefore, not accidental. However, as plaintiff points out, *Jones* concerns the definition of "intentional tort" as it relates to the Workmen's Compensation exclusivity bar. Moreover, there is no question that post-*Jones* Ohio trial courts were "transforming negligence cases into intentional tort cases. [And that c]laims in a number of cases have been based upon injuries caused by some degree of negligence on the part of the employer." *Van Fossen v. Babcock and Wilcox Co.,* 36 Ohio St.3d 100, 115, 522 N.E.2d 489 (1988). If the effect of the *Jones* decision was to allow employees to bring common law negligence

actions against their employers, it does not follow that such actions are to be deemed based on intentional injuries merely because they are characterized as intentional for purposes of the Workmen's Compensation exclusivity bar. *Jones* dealt with no policy coverage issues and is simply not relevant to this case. Moreover, this court has already determined that Illinois law applies. Therefore, the only issue remaining for this court to decide is whether the underlying claim was for an occurance which was an accident under the terms of the insurance contract as interpreted under Illinois law.

### d. Definition of Accident

Under Illinois law "[t]he term 'accident' as used in insurance policies has been defined as an unforeseen, unexpected occurrence without design or intent." *Illinois Farmers Insurance Co. v. Preston,* 153 Ill.App.3d 644, 106 Ill.Dec. 552, 554, 505 N.E.2d 1343, 1345 (1987). There is no question that the deaths of the two Millgard employees were the result of an accident as defined by Illinois law. Defendant's argument to the contrary is misplaced. Essentially, defendant argues that the only exception to Workers Compensation actions in Ohio is for intentional torts; ergo, since the underlying action was brought outside the Workers Compensation scheme the action was for an intentional tort and it could not have been an accident.

Under Ohio law the term accident in an insurance policy is "to be construed and considered according to the ordinary understanding and common usage and speech of people generally." *Freylack v. Dichiro,* slip opinion, docket no. 52770, 1987 WL 30377 (Ohio App.1987). Therefore, even if Ohio law was applied, the facts of the case *sub judice* clearly indicate that coverage would extend to the occurrence that resulted in the deaths of the two Millgard employees.

### e. Conclusion

For the foregoing reasons this court finds that the applicable law is Illinois law

and that under Illinois law the occurrence was an accident. Therefore, plaintiff's motion for summary judgment will be granted and defendant's motion for summary judgment will be denied.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiff's January 13, 1989 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that defendant's December 23, 1988 motion for summary judgment is DENIED.