MCINTYRE *v.* MCINTYRE.

1. DEEDS—VALIDITY — VOLUNTARY CONVEYANCE — CONTRIBUTION — SERVICES—CONSIDERATION.

Where a brother and sister, with the mother and younger children, all worked together in various kinds of work and enterprises and accumulated two parcels of real estate, the title to one coming to the brother at the mother's death, and the other being deeded to the sister by the brother, whether she was entitled to compensation for services, or whether her labor contributed to a common fund, *held*, sufficient to furnish a consideration for the conveyance.

2. TRUSTS—PAROL TRUSTS—VOLUNTARY CONVEYANCE—STATUTES.

In view of 3 Comp. Laws 1915, § 11571, an oral promise to reconvey land voluntarily conveyed is not enforceable as a parol trust, but if fraud entered into the transaction the statute will not apply.

3. JUDGMENT—RES JUDICATA—"WITHOUT PREJUDICE."

A decree dismissing a bill "without prejudice" left the issues open to be again litigated in a subsequent proceeding.

Appeal from Berrien; North, J., presiding. Submitted January 21, 1919. (Docket No. 72.) Decided April 3, 1919.

Bill by John McIntyre against Catherine McIntyre for a reconveyance of certain real estate. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Harris S. Whitney*, for plaintiff.

*I. W. Riford*, for defendant.

BIRD, C. J. The bill in this case is filed by plaintiff to compel defendant to reconvey certain premises situate in Benton Harbor, which he conveyed to her in the year 1896. The reasons which he gives are:

(1) That the deed was without consideration.

(2) That defendant promised to reconvey when requested.

(3) That the deed was obtained by fraud.

(4) That he was mentally incompetent at the time.

The parties are brother and sister and neither were ever married. For several years after the father died, in 1874, they lived with their mother and two younger children. They all worked together, engaging in various kinds of work and enterprises. They were tenants on rented farms. Plaintiff was janitor of churches and school houses, while defendant and her mother ran a restaurant and kept boarders. Defendant also managed an ice cream parlor in which plaintiff was interested, and later plaintiff ran a saloon. During these years of activity they were industrious and saving and as a result accumulated two parcels of real estate, one of which was conveyed to the mother and the other to plaintiff. At the death of the mother, in 1893, defendant became the owner of the parcel held by the mother. In 1896, while plaintiff was engaged in the saloon business, and while in ill health and mentally incompetent as he claims, he conveyed the parcel held by him to defendant. A few years afterwards he demanded a reconveyance, but defendant refused to comply with his demand. It is defendant's claim that plaintiff was indebted to her for services at the time he made the conveyance. After a hearing upon the merits the chancellor refused to grant plaintiff any relief and dismissed his bill.

1. *Consideration.* We are not persuaded that the conveyance to the sister was without consideration. The claim is made that he was indebted to her for services. Whether she was entitled to compensation for services or whether her labor was contributed to a common fund from which the real estate was purchased would make little difference, because if either

were a fact it would furnish a consideration for the conveyance.

2. *Promise to reconvey.* Defendant denies that she ever promised to reconvey, and denies that the conveyance was made to her upon that condition. If the conveyance were a voluntary one and the promise was made as claimed, it being oral, was not enforceable as a parol trust. 3 Comp. Laws 1915, § 11571. *Wipfler* v. *Wipfler,* 153 Mich. 18 (16 L. R. A. [N. S.] 941) ; *Judd* v. *Judd,* 192 Mich. 198. If, however, fraud entered into the transaction the statute would not apply. *Judd* v. *Judd, supra.*

3 and 4. *Was the deed obtained by fraud and was plaintiff mentally incompetent?* There is so little of substance in the record to support the claim of fraud on the part of defendant in obtaining the deed, or that plaintiff was mentally incompetent at the time, that we shall refrain from entering into a discussion of these claims. Plaintiff's testimony on these phases of the case is very weak and lacks corroboration and contains so many contradictions and inconsistencies that it is not at all convincing.

5. *Res adjudicata.* Among the reasons given by the chancellor for denying plaintiff relief was that the issues involved were *res adjudicata.* While our views on the questions already considered dispose of the case, it may be well to consider this question, inasmuch as attention was given to it upon the oral argument and in the briefs of counsel. It appears that in the year 1900 plaintiff filed a bill in the same circuit court against the same party and praying for the same relief upon substantially the same state of facts. After a full hearing thereon a decree was made denying relief and dismissing plaintiff's bill, but *without prejudice.*

In the present proceeding the chancellor construed the words "without prejudice" in the former decree

as having little or no significance. We cannot agree with this view. This well known phrase was placed in the decree for some purpose, and the question is, What significance shall be given to it? It has been many times the subject of judicial construction in various forms of legal proceedings. In *Seamster* v. *Blackstock,* 83 Va. 232 (2 S. E. 36, 5 Am. St. Rep. 262), it was said:

"The words 'without prejudice' contained in a decree dismissing a bill, indicate a right or privilege to take further legal proceedings on the same subject, and show that the dismissal is not intended to be *res adjudicata* of the merits."

In the case of *Newberry* v. *Ruffin,* 102 Va. 73 (45 S. E. 733), it was said that:

"A dismissal of a suit without prejudice is no decision of the controversy on its merits, and leaves the whole subject of litigation as much open to another suit as if no suit had ever been brought."

It was held in *Cochran* v. *Couper,* 2 Del. Ch. 27, that:

"The use of the term 'without prejudice' in a decree dismissing a bill without prejudice, has reference to the effect and operation of the decree itself, and is equivalent to a permission to file another bill in the same cause of action."

In *Lang's Heirs* v. *Waring,* 25 Ala. 625 (60 Am. Dec. 533), it was held that:

"When a bill brought to obtain a divestiture of the legal title of the defendants to real property is dismissed without prejudice, the effect of the reservation is to prevent the decree from constituting a bar to another bill brought upon the same title."

See, also, to the same effect, *Foote* v. *Gibbs,* 1 Gray (Mass.), 412; *Burton* v. *Burton,* 58 Vt. 414 (5 Atl. 281); *Taylor* v. *Slater,* 21 R. I. 104 (41 Atl. 1001); *Ray* v. *Adden,* 50 N. H. 82 (9 Am. Rep. 175); *O'Keefe*

v. *Irvington Real Estate Co.*, 87 Md. 196 (39 Atl. 428) ; *Creighton* v. *Kerr,* 20 Wall. (U. S.) 8; 8 Words & Phrases, p. 7507.

Giving to the words "without prejudice" the meaning which they ordinarily convey to the legal profession, we must hold that the former decree left the issues open to be again litigated in a subsequent proceeding.

The decree of the lower court will be affirmed, with costs of both courts to defendant.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.