# STATE OF MICHIGAN

# COURT OF APPEALS

---

LYNN BETH BAUM,

        Plaintiff/Counter-Defendant-
        Appellee/Cross-Appellant,

v

DAVID M BAUM, PC, DB ACQUISITIONS,
LLC, DAVID M BAUM REVOCABLE TRUST,
MADISON EQUITIES, LLC, NW PROPERTIES,
LLC, and FRASER EQUITIES, LLC,

        Defendants,

and

HOWARD BAUM,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff-Appellant/Cross-Appellee,

and

DAVID BAUM,

        Defendant/Cross-Defendant.

UNPUBLISHED
October 16, 2017

No. 333173
Oakland Circuit Court
LC No. 2015-149725-CZ

---

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

      Lynn Beth Baum filed this lawsuit against a number of defendants: David Baum, her ex-husband; Howard Baum, David's brother; and six entities owned by one or both of the Baum brothers. She seeks to recover more than one million dollars that David allegedly transferred improperly to Howard before and after Lynn filed for divorce. The Baum's divorce judgment included a determination that David's transfers to Howard had been fraudulent, and awarded Lynn the right to take legal action to recover the money David removed from the marital estate.

-1-

Before the divorce judgment entered, Howard sued Lynn and David in the circuit court, contending that the money David transferred to him represented partial repayment of multiple loans Howard had extended to the couple during the course of their 20-year marriage. Howard's breach of contract case was twice dismissed without prejudice and remains dismissed without prejudice.

This background brings us back to Lynn's lawsuit. Howard filed a counterclaim, asserting that Lynn owes him for her half of multiple loans he alleges that he extended during the Baums' marriage. Dueling motions for summary disposition followed. The circuit court found that the divorce judgment's findings that no debt existed and that the transfers had been fraudulent precluded Howard from pursuing his counterclaim, but rejected Lynn's contention that the contract case's dismissal also precluded Howard's countersuit. Howard and Lynn appeal these rulings. Because neither the divorce judgment nor the dismissal has preclusive effect as to Howard, we reverse regarding the first ruling and affirm the second.

## I. THE DIVORCE ACTION AND HOWARD'S BREACH OF CONTRACT CLAIM

Lynn sued David for divorce in April 2012. Her complaint averred that soon after she advised David of her plan to file for divorce, he transferred virtually all of their liquid marital assets to Howard or accounts controlled by Howard. Lynn filed a motion for return of the funds; the family court granted the motion and appointed a receiver.

Shortly thereafter, Howard sued Lynn and David in the Oakland Circuit Court, alleging that they owed him hundreds of thousands of dollars for repayment of loans he had made to them. According to Howard, the Baums regularly borrowed money to pay for their children's private school tuition, home renovations, medical expenses, and family celebrations. Lynn responded with a counterclaim against Howard and a cross-claim against David, asserting that the loan claim was fabricated to justify David's looting of the marital estate. The receiver in the divorce case intervened in Howard's contract action and moved to consolidate the cases in the family court. David opposed this motion, and the family court judge denied it.

Howard's contract case went nowhere, however, as Howard fired his attorney and failed to appear at a status conference, resulting in dismissal of the matter "without prejudice." The circuit court's order provided that the case could be reinstated on a showing of good cause and the payment of Lynn's fees and costs. Howard attempted to reinstate the matter, but the circuit court was unsatisfied with his effort and again dismissed it without prejudice. Howard took no further action to pursue his breach of contract case.

Meanwhile, the Baums' divorce proceeded to arbitration. The arbitrator defaulted David based on his failure to cooperate during discovery and disallowed his testimony. Nevertheless, the arbitrator permitted David to contest whether the transfers to Howard represented payments for enforceable marital debts. Ultimately, the arbitrator found that David had withdrawn approximately $1.2 million from various marital accounts and paid Howard more than $1 million. The arbitrator noted the absence of

-2-

any promissory notes or other documentation of a loan or series of loans by Howard . . . to David [and/or Lynn]. There is no evidence of any specific amount of loaned money. There is no evidence that there were any terms of repayment, such as balance owed and interest rate. There is no evidence of how Howard . . . paid money to David [and/or Lynn] or to providers such as the children's private schools.

The arbitrator concluded, "There is no legally recognized marital debt to Howard Baum. All of the money removed from the accounts described above is part of the marital estate." He further found that David's

withdrawals of money from the marital estate and transfers of money to [Howard] constitutes fraudulent activity as defined by the [Uniform Fraudulent Transfers Act] UFTA. As such, there is a Chose in Action to recover the fraudulently transferred assets. This Chose in Action is awarded to Lynn. . . . In the event that any of the fraudulently transferred assets are recovered, Lynn . . . shall receive the first $742,650.80 of the recovered assets (60% of the monies taken from the marital estate by David . . .), plus her reasonable attorney fees and costs incurred in the recovery process. Further, it is held that David['s] actions in transferring the marital monies to himself and his brother created a debt to Lynn . . . which David . . . owes to her in the amount of $742,650.80.

The family court adopted the arbitrator's findings in its default judgment of divorce. That judgment provides, in part:

There is no legally recognized marital debt owed to Howard. . . .

[David's] withdrawals of funds from the marital estate and the transfer of funds to [Howard] constitutes fraudulent activity as defined by [UFTA]. [Lynn] is awarded a Chose of Action to recover the funds [David] removed from the marital estate. The money transferred from [David] to himself and to Howard . . . and entities owned by Howard . . . constitute fault and therefore, [Lynn] is awarded 60% and [David] is awarded 40% of those funds.

[Lynn] is awarded 60% of the monies [David] withdrew from the marital estate, which as of the date of the Arbitration Award is $742,650.80. In the event that any of the fraudulently withdrawn money/assets are recovered, [Lynn] shall receive the first $742,650.80 of the recovered assets, and she shall be awarded reasonable attorney fees and costs incurred with the recovery process.

[David's] fraudulent withdrawal of marital funds has created a debt due to [Lynn] which [David] shall owe in the amount of $742,650.80.

## II. THIS CASE

Following the entry of the default judgment of divorce, Lynn filed this action against Howard, David, and entities owned or controlled by them. Her complaint sets forth claims of fraudulent transfers, fraud, piercing the corporate veil, common-law and statutory conversion, unjust enrichment, and racketeering. Howard filed a countercomplaint against Lynn and a cross-claim against David alleging breach of contract, account stated, and unjust enrichment. His allegations essentially restate his complaint in his abandoned contract case.

In lieu of answering Howard's counterclaim, Lynn filed a motion for summary disposition under MCR 2.116(C)(8), (C)(7), and (C)(10). She argued that the circuit court's involuntary dismissal of Howard's contract action operated as a judgment on the merits, precluding him from relitigating his claims as a counter-plaintiff in her case. Lynn also contended that no evidence supported Howard's loan allegations or any of his other counterclaims.

In a written opinion, the circuit court ruled that because the dismissal of Howard's contract case had been "without prejudice," it did not operate as an adjudication on the merits for res judicata purposes. But the court found that Howard's privity with David during the divorce proceedings meant that Howard could not assert that he was the couple's creditor "because the doctrine of res judicata prevents this Court from making a finding in conflict with the finding in the Divorce Action." The court then granted summary disposition to Lynn on this ground.

Howard (and only Howard) applied for leave to appeal, and this Court granted the application. *Baum v Baum*, unpublished order of the Court of Appeals, entered November 16, 2016 (Docket No. 333173). Lynn filed a cross-appeal, alternatively arguing that the circuit court should have granted her motion for summary disposition regarding the dismissal in the contract case.

## III. GOVERNING LEGAL PRINCIPLES

We review de novo the circuit court's summary disposition ruling. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). We also review de novo questions of law, including "the application of legal doctrines, such as res judicata and collateral estoppel." *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

In general, res judicata bars a subsequent action when "the first action was decided on the merits," "the matter contested in the second action was or could have been resolved in the first" action, and "both actions involve the same parties or their privies." *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001). "[A] dismissal without prejudice is not a dismissal on the merits." *Grimmer v Lee*, 310 Mich App 95, 102; 872 NW2d 725 (2015). Rather, the term "without prejudice" signifies that a litigant retains a right to take further legal action and " 'that the dismissal is not intended to be *res adjudicata* of the merits.' " *Id*., quoting *McIntyre v McIntyre*, 205 Mich 496, 499; 171 NW 393 (1919).

Collateral estoppel limits the relitigation of issues rather than claims. Its elements are: (1) "a question of fact essential to the judgment" that was "actually litigated and determined by a valid and final judgment;" (2) the same parties or their privies "had a full and fair opportunity to

-4-

litigate" that issue, and (3) the party "taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Monat v State Farm Ins Co*, 469 Mich 679, 682-685; 677 NW2d 843 (2004) (quotation marks, citations, and alteration omitted).

## IV. APPLICATION

Here and in the circuit court, the parties have framed the legal issue presented as whether res judicata bars Howard's counterclaim. Collateral estoppel is the more apt doctrine regarding the preclusive effect of the family court's findings of fraud and the absence of a debt. The core question presented in Howard's appeal is whether these factual determinations bar him from pursuing a contrary theory of recovery in his counterclaim; in other words, Howard seeks to relitigate an *issue* rather than the divorce itself.[1]

The misnomer is of no consequence, however. Both res judicata and collateral estoppel require an identity of parties in the first and second proceedings, or privity between a party to the first action and the party sought to be bound in the second. And regardless of the label, Howard and David were not in privity during David's divorce.

## A. PRECLUSION AND THE DIVORCE ACTION

We begin with res judicata, as that is the legal ground relied on by the parties. With regard to the preclusive effect of the Baums' divorce, two of the three elements of res judicata are easily satisfied: the action was decided on the merits, and the matter of the fraudulent character of the alleged debt was resolved in the judgment. Howard, however, was not a party to the divorce action. Nor does the *evidence* before us demonstrate that he and David were in privity during that proceeding.

In *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004), the Supreme Court espoused "a broad approach to the doctrine of res judicata;" the opinion primarily focused on the first two elements of the doctrine rather than the meaning of "privity." Regarding that concept, the Court stated:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both a "substantial identity of interests" and a "working functional relationship" in which the interests of the nonparty are presented and protected by the party in the litigation. [*Id*. at 122 (citations omitted).]

Examples of such parties in interest include "a principal to an agent, a master to a servant, or an indemnitor to an indemnitee," or someone who inherits or acquires the party's interest after judgment is rendered. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 13; 672 NW2d 351 (2003) (citation omitted). In two of our most recent elaborations on the subject, this Court

---

[1] As to Lynn's cross-appeal, we agree that res judicata is the correct doctrine.

reiterated, "For purposes of res judicata, parties are in privity with each other when they are so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013) (quotation marks and citation omitted). "[A] privy is one who, after the judgment, has an interest in the matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529-530; 866 NW2d 817 (2014).

Rather than sharing a "substantial identity of interests" during the divorce, Howard and David's interests were diametrically opposed; Howard allegedly was a creditor and David his debtor. The factual findings of the arbitrator and the family court that the debt did not exist and that the Baum brothers colluded to impoverish Lynn paint an unsavory—vulgar and repulsive, even—picture. The compelling nature of this picture may tempt a court to overlook that the alignment of interests identified by the court is, fundamentally, a *finding*. Using that finding to establish privity in a subsequent case puts the cart before the horse. Were we to merely affirm the trial court, we would permit the family court's findings in the judgment of divorce to carry the day, thereby eliminating the need for legal analysis of whether David actually functioned as Howard's privy. Absent the family court's finding of fraud, we find no evidence that David was Howard's alter ego during the divorce, or that Howard controlled David's defense, or that the two had a "working functional relationship." Throughout that proceeding, Howard steadfastly maintained that David owed him hundreds of thousands of dollars, evidencing an obvious conflict in the two brothers' interests. And we have located no authority supporting that a fraternal relationship, standing alone, may establish privity.

The United States Supreme Court's thoughtful consideration of privity in a fairly recent opinion reinforces our conclusion. While we recognize that the Supreme Court's interpretation of res judicata principles does not bind Michigan courts, we find its analysis helpful in elucidating why Howard was not David's privy during the divorce action.

In *Taylor v Sturgell*, 553 US 880, 884; 128 S Ct 2161; 171 L Ed 2d 155 (2008), the Court addressed the "virtual representation" exception to the general res judicata rule excluding nonparties from the preclusive effect of a prior judgment. "Virtual representation" had been adopted by a number of the federal circuit courts, albeit in different iterations. *Id*. at 884-885. *Taylor* involved a lawsuit under the federal Freedom of Information Act seeking documents from the Federal Aviation Administration regarding F-45 airplanes. *Id*. at 885-886. An initial lawsuit, brought by Greg Herrick, was dismissed on a summary judgment, a decision that was affirmed by the Tenth Circuit. *Id*. at 886-887. Less than a month later, Herrick's friend, Brent Taylor, brought the same FOIA claim in the district court for the District of Columbia. *Id*. at 887.

The district court dismissed Taylor's lawsuit as precluded by Herrick's action, and the District of Columbia Circuit Court affirmed. *Id*. at 888-889. In finding "virtual representation," the district court relied on the facts that Herrick and Taylor were "close associates" in the antique aircraft community, Herrick had sought Taylor's help in restoring his F-45, the men were represented by the same lawyer, and the two had shared the documents voluntarily produced by the FAA during Herrick's suit. *Id*. at 889. The D.C. Circuit affirmed, announcing a five-factor test for "virtual representation" consisting of "identity of interests," "adequate representation" in the prior adjudication, "a close relationship between the present party and his putative

-6-

representative," "substantial participation by the present party in the first case," or "tactical maneuvering on the part of the present party in the first case." *Id*. at 889-890 (quotation marks and citations omitted).

The Supreme Court unanimously reversed the D.C. Circuit, highlighting that the federal law of preclusion "is, of course, subject to due process limitations," and that "[t]he application of claim and issue preclusion to nonparties . . . runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.' " *Id*. at 891, 893 (citation omitted). The Court continued:

> Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." [*Id*. at 893 (citation omitted).]

Notwithstanding these general principles, the *Taylor* Court recognized six discrete categories of exceptions to the rule against nonparty preclusion. One of the exceptions roughly corresponds to the privity framework articulated in *Adair* and other Michigan cases.[2]

Under Michigan law, parties are in privity for res judicata purposes if the first litigant represents the same legal right as the second asserts, the parties share "a substantial identity of interests," or enjoy "a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation." *Adair*, 470 Mich at 122 (quotation marks and citations omitted). *Taylor* supplies a similarly structured exception. "[I]n certain limited circumstances," the Supreme Court posited, preclusion applies when a nonparty was "adequately represented by someone with the same interests who [wa]s a party to the suit." *Taylor*, 553 US at 894 (quotation marks and citation omitted, alteration in original). Such "representative" suits include class actions, and lawsuits "brought by trustees, guardian, and other fiduciaries[.]. *Id*. The Supreme Court emphasized that "adequate representation" by another is demonstrated "only if (at a minimum) one of . . . two circumstances is present." *Id*. at 897. Those two circumstances, also referred to by the Court as "procedural protections," are: "(1) The interests of the nonparty and her representative are aligned, and (2) either the nonparty understood herself to

---

[2] The six categories comprising exceptions to the rule against nonparty preclusion are: (1) an initial suit in which others agree to be bound by the judgment; (2) litigation conducted in the first instance by a person with a preexisting "substantive legal relationship" with a subsequent claimant, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor;" (3) adequate representation in the initial suit by someone with the same interests, such as class actions and suits brought by trustees, guardians, or other fiduciaries; (4) a nonparty who "assumed control" over the litigation in which a judgment was rendered; (5) a nonparty who later brings suit as an agent for a party is bound by the initial judgment; and (6) "special statutory scheme[s] may 'expressly foreclose[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process.' " Taylor, 553 US at 893-895 (citations omitted, second and third alterations in original).

be acting in a representative capacity or the original court took care to protect the interests of the nonparty[.]" *Id*. at 900 (citations omitted).

The D.C. Circuit erred, the Court ruled, by applying "an expansive doctrine of virtual representation" that created, "in effect, a common-law kind of class action." *Id*. at 901 (quotation marks and citation omitted). Permitting preclusion on a virtual representation theory "based on identity of interests and some kind of relationship between parties and nonparties, shorn of the procedural protections" would "circumvent[]" due process. *Id*. The Court specifically rejected the D.C. Circuit's notion that privity is established when the "relationship between a party and a non-party is 'close enough' to bring the second litigant within the judgment." *Id*. at 898. This "amorphous balancing test is at odds with the constrained approach to nonparty preclusion our decisions advance," the Court explained. *Id*.

Under the privity formulation of either *Adair* or *Taylor*, David and Howard were not sufficiently connected to qualify as privies. Nothing in the record substantiates that David intended that his litigation actions (and deliberate inactions) during the divorce proceedings would bind his brother's claim for repayment of the alleged loans. No evidence was presented in this case that Howard controlled the divorce proceedings on David's behalf, or that David acted as Howard's agent in that litigation, or that David was legally accountable to Howard. The two have no legal relationship that has been brought to our attention. Nor does the record support that the family court "took care to protect" Howard's interests in collecting the alleged debt.

Our collateral estoppel analysis leads to the same conclusion. Indisputably, the existence of a debt and whether David's transfers to Howard were fraudulent constituted questions of fact essential to the divorce judgment. But the second element of collateral estoppel requires that the same parties or their privies had a full and fair opportunity to litigate those issues. For the reasons we have elucidated, David was not Howard's privy during the divorce. Accordingly, Lynn may not use the family court's factual findings to bar Howard's counterclaim in this case.

## B. PRECLUSION AND HOWARD'S BREACH OF CONTRACT ACTION

Lynn urges us to find that even if the divorce case does not preclude Howard's counterclaim, his failed effort to prosecute a breach of contract action against her and David does. While this case and the contract case involve the same parties and claims, the contract case was not decided on the merits. As noted, "[a] dismissal *with* prejudice amounts to an adjudication on the merits and bars a further action based on the same facts. But a dismissal *without* prejudice is not a dismissal on the merits." *Grimmer*, 310 Mich App at 102. "Our Supreme Court has described that the term 'without prejudice' signifies 'a right or privilege to take further legal proceedings on the same subject, and show that the dismissal is not intended to be *res adjudicata* of the merits.' " *Id*., quoting *McIntyre*, 205 Mich at 499.

We reverse the grant of summary disposition in Lynn's favor regarding the preclusive effect of the divorce judgment's factual findings, and affirm the denial of summary disposition with regard to the contract case. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle