# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER TURUNEN doing business as HOGAN
LAND IMPROVEMENT COMPANY,

UNPUBLISHED
July 5, 2018

Plaintiff/Counterdefendant-
Appellee,

v

No. 336075
Baraga Circuit Court
LC No. 2012-006259-CZ

DEPARTMENT OF NATURAL RESOURCES
and DIRECTOR, DEPARTMENT OF NATURAL
RESOURCES,

Defendants/Counterplaintiffs -
Appellants.

Before: STEPHENS, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

This case began in 2012 with plaintiff's filing of a complaint for declaratory and injunctive relief regarding the application of defendants' Invasive Species Order Amendment 1 (ISO) to the swine plaintiff raises and sells to hunting ranches. Since that time, defendant has filed four appeals with this Court. In 2013, we denied defendants' application for leave to appeal the circuit's grant of a preliminary injunction to plaintiff that allowed him to continue to sell his animals in Michigan during the pendency of litigation to determine the applicability of the ISO to his animals.[1] In 2014, this Court granted defendants' application for leave to appeal the circuit court's decision that granted plaintiff's motion for partial summary disposition and found the ISO unconstitutional. In *Johnson v Dep't of Nat Res*, 310 Mich App 635; 873 NW2d 842 (2015), this Court reversed and held that the ISO was not unconstitutional on equal protection, due process or vagueness grounds, and remanded the matter.[2] In 2016, we denied defendants' application for leave to appeal the circuit court's decision that denied defendants' motion for

---

[1] *Turunen v Dep't of Natural Resources Director*, unpublished order of the Court of Appeals, entered December 6, 2013 (Docket No. 317933).

[2] *Turunen v Dep't of Natural Resources Director*, unpublished order of the Court of Appeals, entered September 18, 2014 (Docket No. 321339).

voluntary dismissal without prejudice of their counterclaim for nuisance abatement. On remand, the case proceeded to a bench trial and culminated with the November 22, 2016 circuit court Opinion and Order that defendants now appeal as of right. That opinion and order found that defendants erred in classifying eight animals belonging to plaintiff as invasive species prohibited under the ISO. We affirm in part and remand in part.

I. BACKGROUND

In 2010, the Department of Natural Resources (DNR) issued ISO Amendment 1, which "add[ed] Russian wild boar and their hybrids to the list of Michigan's invasive species." *Johnson*, 310 Mich App at 643. The amended ISO provided in pertinent part that:

> Possession of the following live species, including a hybrid or genetic variant of the species, an egg or offspring of the species or of a hybrid or genetically engineered variant, is prohibited:
>
> * * *
>
> (b) Wild boar, wild hog, wild swine, feral pig, feral hog, feral swine, Old world swine, razorback, eurasian wild boar, Russian wild boar (Sus scrofa Linnaeus). This subsection does not and is not intended to affect sus domestica involved in domestic hog production. [§ 40.4(1)(b).]

Under part 413 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.41301 et seq., a person may not possess, sell, or introduce a prohibited species. MCL 324.41303; MCL 324.41306; MCL 324.41309. Defendants offered training on how to distinguish Sus scrofa from Sus domestica from Dr. John Mayer, an internationally known biologist, to their personnel as well as local animal owners. That training taught them how to identify the animals by genotype ("the unique genetic make-up of a species") and phenotype ("the expression of those genes, which results in specific physical, biochemical, or behavioral characteristics"). Defendants issued a declaratory ruling (DR), which it later rescinded, that listed eight phenotypes for identifying Sus scrofa modeled after Dr. Mayer's training.[3] Despite its rescission of the DR, defendants continued to refer to those phenotypes as a guide for identification.

On February 21, 2012, plaintiff filed a Complaint for Declaratory Ruling and Injunctive Relief for the court to determine the applicability of the ISO to his animals. On March 26, 2012, defendants filed a counterclaim for declaratory and injunctive relief alleging that plaintiff was

---

[3] The sum of those characteristics were: 1) an arched dorsal profile or arched back; 2) front shoulders that were larger than the hind quarters; 3) darker colored fur toward the hooves; 4) "dark brown to blackish in color, sometimes gray" fur with "light-tipped bristles;" 5) erect ears and a straight tail that were both darker at the tips; 6) a facial mask that appeared as a light-colored beard; 7) more slender from a frontal profile with eyes that appeared more on the side of their head, and 8) an elongated rostrum or nose.

required to abate the public nuisance of owning Russian Boar. Plaintiff's case was later consolidated with the cases of other plaintiffs challenging the DR and ISO, and in March 2014, the Marquette circuit court granted them summary disposition as to their claims that the ISO violated the equal protection and due process clauses, and was void for vagueness. This Court, in *Johnson v Dep't of Nat Res*, *supra*, disagreed and found the ISO constitutional. The plaintiffs' cases were remanded to their home circuit courts. On remand, defendants conducted inspections of plaintiff's hogs on December 18, 2015, and September 28, 2016. Defendants motioned the court to enter an order for voluntary dismissal of their counterclaim after defendants found no Russian wild boar at plaintiff's facility in December 2015. That motion was denied. The circuit court determined that *Johnson v Dep't of Nat Res*, 310 Mich App 635, rendered plaintiff's 2012 complaint allegations regarding the ISO's constitutionality moot, but found that the allegations in defendants' March 2012 counterclaim were still viable.

In September 2016, the defendants conducted an inspection, and identified eight pigs they believed were either Russian wild boar or hybrids thereof. The case continued to a bench trial where the issue before the court became whether plaintiff's eight animals were properly classified by defendants as being prohibited under the ISO. The court entered a verdict of no cause of action on the counterclaim. Among its reasons, were that the "identification of completely reliable characteristics for feral hogs, Eurasian wild boar and hybrids between the two has yet to be achieved," and that defendants had no clearly defined standard for determining invasive species under the ISO.

On appeal to this Court, defendants argue the circuit court's decision violated the law of the case in *Johnson v Dep't of Nat Res* and was clearly erroneous in finding that plaintiff's animals were not prohibited under the ISO. Further, that the court lacked subject-matter jurisdiction to decide the case after defendants filed a motion for voluntary dismissal of their counterclaim.

## II. LAW OF THE CASE DOCTRINE

### A. STANDARD OF REVIEW

Whether the circuit court violated the law of the case doctrine is a legal question we review de novo. *Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

### B. ANALYSIS

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case." *Id*. "The constitutionality of a statute is a question of law[.]" *Citizens for Unif Taxation v Northport Pub Sch Dist*, 239 Mich App 284, 287; 608 NW2d 480 (2000). "The doctrine exists primarily to maintain consistency and avoid reconsideration of matters previously decided in the course of a single, continuing lawsuit." *City of Marysville v Pate, Hirn & Bogue, Inc*, 196 Mich App 32, 34; 492 NW2d 481 (1992). "Two exceptions to the doctrine exist: (1) when the decision would preclude the independent review of constitutional facts and

-3-

(2) when there has been an intervening change of law." *Webb v Smith*, 224 Mich App 203, 210; 568 NW2d 378 (1997). Neither exception is implicated here.

The Court's prior decision in *Johnson v Dep't of Nat Res*, 310 Mich App 635, established the law of the case regarding the ISO's constitutionality as written. There, "[t]he circuit court found that the ISO unreasonably and arbitrarily classifie[d] the pigs 'under the[ ] control and husbandry' of plaintiffs as an invasive species, while permitting unfettered ownership of swine 'under the control and husbandry of other pig farmers.'" *Id*. at 651. Additionally, "[t]he circuit court found that the distinctions between pig species articulated by the ISO and the declaratory ruling lacked reasonably precise standards, and swept so broadly that they subjected plaintiffs to prosecution for owning 'legal' pigs." *Id*. at 654. A panel of this Court disagreed and held that "the classifications set forth in the ISO [we]re reasonable and rationally related to the government's legitimate environmental objectives" to rid the landscape of feral swine that were destructive. *Id*. at 652, 655. It further held that,

> [t]he ISO's delineation of the species declared invasive leaves little to the imagination. The words used to identify forbidden pigs do not describe Porky Pig, guinea pigs, or any of the swinish breeds associated with a farm or a livestock yard. Moreover, plaintiffs are well aware of the differences between their boars and pigs raised for agricultural purposes. . . . The lines drawn in the ISO between protected and prohibited pigs are neither elusive nor uncertain, and suffice to provide fair notice to swine owners of ordinary intelligence. No more is required. [*Id*. at 658-659].

In partly affirming the circuit court, this Court agreed that the plaintiffs' admission that they owned Russian boars was evidence that the ISO was not vague, because the plaintiffs' were able to identify their animals were prohibited under the order. *Id*. at 658 n 10.

Defendants argue the circuit court on remand violated the law of the case doctrine when it applied a void-for-vagueness analysis and decided that defendants' standard for determining which animals were Sus scrofa was unclear. Plaintiff argues the circuit court did not touch on the ISO's constitutionality and only decided whether plaintiff's animals were prohibited under the ISO.

ISO Amendment 1 added Sus scrofa to the list of invasive species prohibited in the state of Michigan and clarified that Sus domestica were not prohibited. The *Johnson* Court found that the terms of the order as amended were valid as written. It was not asked however, to apply the order to determine whether the plaintiffs' animals were prohibited under the ISO, because the plaintiffs conceded that their animals were Russian wild boar prohibited under the order. There is no such concession here. Post-*Johnson*, plaintiff's claim was that he had since sold the prohibited animals and that the eight animals in his possession in January 2016 were not Russian wild boar, but the result of breeding Sus domestica species of pig. Defendants' counter complaint asked the court to abate the nuisance of plaintiff owning Russian wild boar. On remand, the circuit court acknowledged the narrowness of the issue it was to decide by ruling that *Johnson* rendered plaintiff's complaint allegations, which largely challenged the ISO's constitutionality, moot, but defendants' counter complaint was still viable. It indicated it was left

"to determine whether the eight (8) animals in controversy were appropriately classified under the law as being members of the prohibited species, Sus scrofa or a Sus scrofa hybrid."

The circuit court found *inter alia* that "[c]haracterisics of Russian boar are difficult to ascertain." It held:

> 1. The utilization of phenotypes to identify Russian boar and hybrids is problematic and can be difficult.
>
> 2. The evidence did not establish a clearly defined, explicit standard to determine when a pig exhibiting some traits of Sus scrofa crosses the line and becomes invasive under the ISO.
>
> 3. To determine if an animal is invasive, may require the input of multiple experts, and laypersons would generally lack sufficient ability to know when an animals [sic] exhibits traits sufficient enough to be deemed invasive.
>
> 4. The testimony offered by the MDNR that eight (8) of Plaintiff's animals are invasive under the ISO is not based on reliable principles and methods; in that, such determination is not reliant on a clearly defined standard, or upon the identification of completely reliable morphologies or phenotypes; and thus, the testimony offered does not satisfactorily establish the proposition asserted. MRE 702.
>
> 5. Defendant, on its counter claim, has not met its burden of proof that eight (8) of Plaintiff's animals, or any of them, are prohibited by the ISO.

The circuit court declined to consider the opinions of defendants' experts because it determined their methodology unsound because there was no "clearly defined standard" for determining what combination of traits renders a particular pig Sus Scrofa rather than Sus Domestica. While the testimony was clear that no pig had been classified as a wild boar based upon a singular trait, no expert testified as to the number of traits exceeding one that distinguished a prohibited pig from a legal one. However, it was also clear from the testimony that the proffered experts were using a methodology that was generally accepted in the field. Thus, they appear to have satisfied the bare minimum requirements of MRE 702 to make their testimony admissible. The court made no record of a 702 admissibility determination and neither party challenged the admissibility. It appears that the court did not find their testimony, albeit admissible, persuasive. If that was the case, then a fact-finding as to each of plaintiff's eight pigs must be done. It is unclear to this Court however, whether the circuit court was also making a fact-finding that the ISO was unconstitutional as applied, which was an issue not ruled upon in *Johnson*. Therefore, we remand this matter to the circuit court. On remand, the court shall make such ruling on the constitutionality of the ISO as applied as it deems appropriate and shall make a fact-finding on each animal.

### III. SUBJECT-MATTER JURISDICTION

### A. STANDARD OF REVIEW

"We review the trial court's decision" on a "motion for voluntary dismissal to see whether the decision was without justification." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 570; 525 NW2d 489 (1994).

A challenge to the circuit court's subject matter jurisdiction presents a question of law that this Court reviews de novo. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 708–709; 742 NW2d 399 (2007).

"We review de novo whether an issue is moot." *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016).

### B. ANALYSIS

"Generally, subject-matter jurisdiction is defined as a court's power to hear and determine a cause or matter." *In re Contempt of Dorsey*, 306 Mich App 571, 581; 858 NW2d 84 (2014). "In the absence of an actual controversy, the trial court lacks subject-matter jurisdiction to enter a declaratory judgment." *Leemreis v Sherman Tp*, 273 Mich App 691, 703; 731 NW2d 787 (2007). "An actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights" and "is a condition precedent to the invocation of declaratory relief." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011). "The actual controversy requirement of MCR 2.605 requires that the Court not decide moot questions in the guise of giving declaratory relief, because moot cases present[ ] only abstract questions of law that do not rest upon existing facts or rights[.]" *Leemreis*, 273 Mich App at 703 (internal quotation marks and citations omitted). An issue becomes "moot if this Court's ruling 'cannot for any reason have a practical legal effect on the existing controversy,' " *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013) (citation omitted), or "when a subsequent event renders it impossible for the appellate court to fashion a remedy," *Kieta v Thomas M. Cooley Law Sch*, 290 Mich App 144, 147; 799 NW2d 579 (2010).

When the parties do not stipulate to voluntary dismissal, "an action may not be dismissed at the plaintiff's request except by order of the court on terms and conditions the court deems proper." MCR 2.504(A)(2). "Unless the order specifies otherwise, a dismissal under subrule (A)(2) is without prejudice." MCR 2.504(b). " 'A dismissal of a suit without prejudice is no decision of the controversy on its merits, and leaves the whole subject of litigation as much open to another suit as if no suit had ever been brought.' " *Grimmer v Lee*, 310 Mich App 95, 102; 872 NW2d 725 (2015), quoting *McIntyre v McIntyre*, 205 Mich 496, 499; 171 NW 393 (1919). "The grant or denial of voluntary dismissal is within the discretion of the trial court." *McKelvie v City of Mount Clemens*, 193 Mich App 81, 86; 483 NW2d 442 (1992). "Normally, such a motion should be granted unless defendant will be legally prejudiced as a result." *African Methodist Episcopal Church v Shoulders*, 38 Mich App 210, 212; 196 NW2d 16 (1972).

Defendants' counterclaim was a "civil action for declaratory and injunctive relief to require Counter-Defendants Roger Turunen and Hogan Land Improvement Company to comply

-6-

with Part 413, Transgenic and Nonnative Organisms, of the Natural Resources and Environment Protection Act" and to "order Counter-Defendants to abate the common law public nuisance caused by possession of a prohibited species under Part 413." Defendants motioned to voluntarily dismiss their counterclaim after Dr. Duane Etter inspected plaintiff's six pigs on December 18, 2015, and found none of them exhibited Sus scrofa phenotypes. The court denied the motion and drew attention to plaintiff's pig inventory balance sheet that showed he had obtained new animals from Ma Hogs (Mrs. Turunen's business) that had yet to be inspected, and the following averment from Dr. Etter's affidavit that:

5.      During the inspection of the property at 16115 Bellaire Road, I observed hundreds of pigs. Some of the pigs on the property displayed the phenotypical characteristics of Sus scrofa Linneaus, while others did not.

6.      Mr. Turunen had previously stated in discovery responses that he owned six pigs. During the inspection, I requested to inspect Mr. Turunen's six pigs.

The court further emphasized plaintiff would be prejudiced if it granted the motion because with no case pending, plaintiff would not be able to seek an injunction to protect his business from defendants' interference, and the injunction the court had in place during this litigation would dissolve and leave plaintiff open to negative action without a trial on the merits. The court also stressed the amount of time the parties had been in litigation and the waste of judicial resources that would occur should the court grant the motion only for the case to be re-filed the following day. Defendants all but admitted this would be their future course of action when they declined, at the court's request, to agree to "a dismissal order [that] would be a res judicata determination that Mr. Turunen, as he operates, manages his farm and as he conducts his business as of today, is not violative of the ISO."

In this case, the court's decision to deny defendants' motion for voluntary dismissal was justified. Certainly, with the facts presented, declaratory relief was needed to guide plaintiff's future conduct. Given that plaintiff's business was still viable and there was an existing contract between himself and his wife to transfer, maintain and care for pigs, the amount of pigs plaintiff had was likely to change after the December 2015 inspection. Dr. Etter's affidavit vouched for this flux in plaintiff's inventory. The issue of whether plaintiff's animals were prohibited under the ISO was, therefore, not moot. Prejudice to plaintiff also weighed in favor of not granting the motion. Plaintiff spent a substantial amount of time and money defending his business and obtaining equitable relief. A dismissal without prejudice would have denied plaintiff resolution of the merits of his case, dissolved the protections he had in place, and prolonged litigation for another day, which, as the circuit court noted, was wasteful.

Affirmed in part and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause